UNITED STATES, Appellee,

v.

Sergeant David W. FINK, 485–72–1841,
United States Army, Appellant.

ACMR 8902495.

U.S. Army Court of Military Review.

31 May 1991.

For Appellant: Captain Emmett G. Wells, JAGC (argued), Lieutenant Colonel Russell S. Estey, JAGC, Captain Brian D. Bailey, JAGC (on brief).

For Appellee: Captain Jonathan F. Potter, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, Sergeant Fink was convicted by a general court-martial composed of officer and enlisted members of three specifications of indecent acts with a child, false swearing, and obstruction of justice, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (1982). The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for two years.

Sergeant Fink asserts that the military judge erred by admitting, as exceptions to the hearsay rule, several unsworn, out-of-court statements made by the child victim and the victim's mother.

### I. Facts

Angela, the victim of the sexual abuse in this case, was Sergeant Fink's twelve-year-old daughter. She was in the seventh grade but had the cognitive ability of a second grader with an intelligence quotient (IQ) of 61. The indecent acts, consisting of fondling of the girl's breasts and vagina, occurred on three occasions during a one-month period in the fall of 1988. After the sexual abuse came to light, Sergeant Fink denied under oath his daughter's allegations and urged his wife to give false information regarding the indecent acts.

Because of her mental impairment, Angela was in a special education program at school. She was assigned a full-time teacher's aide to help her with her school work. On 20 September 1988, the teacher's aide, while walking with Angela between classes, noticed that she was "very upset" and uncharacteristically uncommunicative. When the aide asked Angela what she had for breakfast, the child became more upset and said that the aide should not ask about anything that goes on in her home. Shortly thereafter, Angela blurted out, "I know you teachers, and— and you people are talking about my sexual acts at home." The child said nothing further. The teacher's aide did not pursue the matter but did report it to the teacher.

A month later, Angela got off the school bus in the morning, immediately approached the school nurse, and asked to speak with her in private. During this conversation, Angela revealed several incidents of sexual abuse by the appellant, including one that occurred the previous evening and one that morning. The school nurse contacted Doctor (MAJ) Shields, the Chief of Social Work Services and Chairman of the Family Advocacy Case Management Team at the local military hospital.[1] MAJ Shields, a psychologist with a Ph.D. in social work, called the Criminal Investigation Command (CID). Later that day,

---

1. The Family Advocacy Case Management Team [FACMT] is part of the Army's Family Advocacy Program. *See* Army Reg. 608–18, The Army Family Advocacy Program (18 September 1987). Paragraph 2–3a states:

a. The purpose of the FACMT is to coordinate medical, dental, legal, law enforcement and social services' reporting, identification, investigation and treatment functions and command intervention from the initial report of spouse or child abuse to case closure.

Angela was examined by a pediatrician at the local military hospital. The school nurse accompanied the child to the hospital. Angela repeated her allegations to the pediatrician in more graphic detail during a general medical examination. As a result of the examination, Angela was hospitalized for observation. About three days later, while she was still in the hospital, MAJ Shields visited her, introduced himself as "Doctor" and asked her questions regarding the fondling. Angela repeated the sexual abuse allegations during that interview and in two later interviews. At one of these interviews, a month-and-a-half after the first interview, Angela's mother was present. In response to MAJ Shields' questions, the mother made a number of damaging statements regarding her husband's nocturnal visits to Angela's bedroom and his attempts to discourage Mrs. Fink from testifying.

At trial, Angela testified that she remembered talking with several of the aforementioned individuals concerning her father's sexual abuse but could not recall the substance of her statements. She vaguely described approximately six instances when her father touched her improperly. When the government indicated its intent to introduce Angela's statements through the teacher's aide, nurse, pediatrician and MAJ Shields, the defense moved *in limine* to suppress the statements. The military judge admitted all of Angela's statements. The mother testified but denied making statements to MAJ Shields regarding the husband's presence in the family quarters when he allegedly attempted to obstruct justice. The military judge permitted MAJ Shields to testify regarding Mrs. Fink's statements.

2. While the military judge was satisfied that the statement was admissible under both bases, he made additional findings, assuming *arguendo* that the statement did not fit precisely under a specific exception to the hearsay rule. He found, in the alternative, that the evidence was admissible as residual hearsay under Mil.R. Evid. 803(24). Unlike the situation in *United States v. Jones*, 30 M.J. 127 (C.M.A.1990), the evidence in the present case was litigated on alternate bases, and the military judge made specific findings of fact and law that would

## II. Analysis

### A. Initial Considerations

■ The sole issue here is whether the statements of Angela and her mother are admissible as exceptions to the hearsay rule under the Military Rules of Evidence. Manual for Courts–Martial [hereinafter MCM], United States, 1984, Military Rules of Evidence [hereinafter Mil.R.Evid.]. Since both Angela and her mother were present and testified at trial, there is no Sixth Amendment confrontation issue in this case regarding their statements. *See United States v. Deland*, 22 M.J. 70, 72 (C.M.A.1986), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *United States v. LeMere*, 22 M.J. 61, 69 (C.M.A. 1986), *citing California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

### B. Angela's Statement to the School Nurse

■ The military allowed into evidence Angela's statement to the school nurse on two bases: (1) as an excited utterance under Mil.R.Evid. 803(2); and, (2) as a statement made for the purpose of medical treatment or diagnosis under Mil.R.Evid. 803(4).[2]

■ "Excited utterance" is defined in Rule 803(2) as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Mil.R.Evid. 803(2). The degree of excitement is not the key to admissibility. Rather it is the spontaneity of the statement. *United States v. Urbina*, 14 M.J. 962, 965 (A.C.M.R.1982), *pet. denied*, 15 M.J. 380 (C.M.A.1983), *citing United States v. Hill*, 13 M.J. 882 (A.C.M.R.1982). We have first

permit us to affirm on this alternate basis. We agree with the military judge that if the statement is not admissible under Mil.R.Evid. 803(2) or 803(4), the statement made to the school nurse would be admissible as residual hearsay under Mil.R.Evid. 803(24) because it closely resembles hearsay admissible under these two exceptions. *See United States v. Quick*, 22 M.J. 722 (A.C.M.R.1986) (statement to babysitter closely resembled statements admissible under Mil.R.Evid. 803(2) and 803(4)), *aff'd*, 26 M.J. 460 (C.M.A.1988).

considered the lapse of time between the event and the utterance. Angela indicated that her father had touched her the previous evening and had again touched her that morning. We do not find this lapse of time to be determinative of the statement's admissibility. *United States v. Arnold,* 25 M.J. 129 (C.M.A.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *United States v. Urbina,* 14 M.J. at 962; *Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir.1988); *United States v. Iron Shell,* 633 F.2d 77, 85–86 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). *But see United States v. LeMere,* 22 M.J. at 68 (child-victim's statement made on morning after alleged sodomy was not admissible under excited utterance exception). We have also considered Angela's demeanor. The school nurse testified that the child "talked in a very calm manner" and was "not overly emotional" or upset; she seemed "very in control," but "kind of resigned" during this conversation. The military judge found that, although the child was not excited or crying, her demeanor indicated depression, "as if some big weight was upon her." We do not believe that "depression" equates to "excitement." Further, the record does not indicate that the event was viewed as "startling" by the declarant, nor did she appear to be under the "stress of excitement" of the event. *See LeMere,* 22 M.J. at 68. *Compare United States v. Arnold,* 25 M.J. at 129 (victim was, simultaneously, " 'really agitated' and 'very, very subdued' "). *See generally United States v. Jones,* 30 M.J. at 131. Therefore, we hold that Angela's statement to the school nurse was not admissible as an excited utterance under Mil.R.Evid. 803(2).

■ The military judge found a second basis for admitting the statement: that it was also made for purposes of medical treatment or diagnosis under Mil.R.Evid. 803(4). The nurse testified that the school social worker had alerted her several days before that Angela might be coming to her to discuss a problem. The social worker had suggested to Angela that she see the nurse if Angela "needed anybody to talk to" about sex. Two days later, Angela did seek out the school nurse and told her about her father's indecent acts. Statements made to nurses may qualify under Mil.R.Evid. 803(4) as statements made for purposes of medical treatment or diagnosis. *See United States v. Brown,* 25 M.J. 867 (A.C.M.R.1988); *United States v. Evans,* 23 M.J. 665 (A.C.M.R.1986), *aff'd,* 27 M.J. 447 (C.M.A.1988), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 991 (1989); *United States v. Williamson,* 23 M.J. 706, 708 (A.F.C.M.R.1986), *rev'd on other grounds,* 26 M.J. 115 (C.M.A.1988). To qualify under this rule the evidence must satisfy two requirements: (1) that the statements were made for purposes of medical diagnosis or treatment; and, (2) that the statements "were clearly made with some expectation of receiving medical benefit." *United States v. Edens,* 31 M.J. 267 (C.M.A.1990) *citing United States v. Deland,* 22 M.J. at 70. *See also United States v. Avila,* 27 M.J. 62, 66 (C.M.A. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989); *United States v. White,* 25 M.J. 50 (C.M.A.1987); *United States v. Williamson,* 26 M.J. at 118; *United States v. Welch,* 25 M.J. 23 (C.M.A. 1987). The statements need not be made to a medical doctor, but may be made to nurses, psychologists and even non-medical personnel to include family members. *See United States v. Welch,* 25 M.J. at 25; Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 803(4) analysis, app. 22, at A22–43, 44; S. Salzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual,* 642–43 (2d ed.1986). We find that the requirements were met in this case. Even though the evidence reflects that Angela had limited cognitive abilities, we are satisfied that her decision to see the school nurse was her own and was motivated by her desire to obtain help for her emotional distress.

#### C. Angela's Statement to the Pediatrician

■ We also agree that the statement made to the pediatrician was admissible as a statement made for the purpose of medi-

cal treatment under Mil.R.Evid. 803(4). *United States v. Edens*, 31 M.J. at 267.

### D. Angela's Statement to the Teacher's Aide

■ The military judge allowed into evidence the unsolicited statement to the teacher's aide as residual hearsay under Mil.R.Evid. 803(24), finding the evidence relevant and probative because it showed Angela's state of mind and emotional state. The military judge's findings of fact are as follows:

(1) Mrs. Walker was a teacher's aide in the special education class at Patch High School.

(2) Angela Fink was a student in that class.

(3) Mrs. Walker was assigned to work with Angela.

(4) On or about 20 September 1988, Mrs. Walker asked Angela an innocuous question.

(5) In response, Angela blurted out that she was not supposed to talk about what goes on at home.

(6) Angela was very excited at the time.

(7) Later, after Angela had calmed down, she was walking down the stairs with Mrs. Walker.

(8) [Angela] blurted out "I know you are talking about my sexual acts at home."

The military judge found the following factors to establish the equivalent circumstantial guarantees of trustworthiness:

(1) The statements closely approximate excited utterances, a firmly rooted hearsay exception.

(2) The statement has not been recanted.

(3) No reason exists for Angela to lie about the subject matter of the statements.

(4) The statements were spontaneous and not in response to any questioning.

(5) Angela became very upset at the time of the statements, indicating to me something weighing on her.

We agree with the judge's findings of fact and law and hold that he did not abuse his discretion in admitting Angela's state-ment to the teacher's aide. *See United States v. Jones*, 30 M.J. at 127.

### E. Mrs. Fink's Statements to MAJ Shields

At trial, Mrs. Fink denied certain damaging statements made by her to MAJ Shields. On the strength of her denials, the trial counsel sought to introduce the testimony of MAJ Shields regarding these statements. Because Mrs. Fink's statements were made during counseling sessions, the government sought to introduce the statements as statements made for medical treatment or diagnosis.

MAJ Shields testified that, as a social worker, he was treating not only Angela but also the Fink family. He considered the whole family as a "victim" and considered that he was providing psychological "treatment" to the family unit. Mrs. Fink, on the other hand, testified that she felt she was compelled to attend counseling sessions with MAJ Shields and felt he was acting as an investigator rather than a therapist. There is some basis in fact for Mrs. Fink's feelings, since MAJ Shields, in his capacity as Chairman of the Child Advocacy Case Management Team, consulted with the trial counsel and with the community commander regarding this case, and used information from the trial counsel in discussions with Mrs. Fink and Angela. It appears that the family initially viewed him as a counselor, but became increasingly reluctant as time went by to volunteer information as the interviews became more investigative in nature.

■ Statements made to a psychologist or to a social worker are admissible into evidence as statements made for the purpose of medical diagnosis or treatment. *See United States v. White*, 25 M.J. at 50; *United States v. Nelson*, 25 M.J. 110 (C.M. A.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988); *United States v. Armstrong*, 30 M.J. 769 (A.C. M.R. 1990); *United States v. Cottriel*, 21 M.J. 535 (N.M.C.M.R.1985), *affirmed*, 25 M.J. 376 (C.M.A.1987). When, as here, the statement is not made with the purpose of seeking medical treatment or diagnosis, that exception cannot be used. Because of

these apparent mixed purposes in MAJ Shields' meetings with the family and Mrs. Fink's perceptions of the purpose of the meetings, the military judge correctly did not permit the statements into evidence as statements made for the purpose of medical treatment. The military judge found that Angela and her mother did not seek MAJ Shields' assistance for medical purposes. Instead, the military judge found the statements qualified as residual hearsay under Mil.R.Evid. 803(24). His findings of fact are as follows:

(1) After interviewing Angela in the hospital, Doctor Shields took over the Fink case as his own.

(2) Among other things, he attempted to create a family plan to provide treatment for Angela, her brother and Mrs. Fink.

(3) He also attempted to create a contingency plan for the family in the event the accused would be convicted and separated from the family.

(4) This procedure included counselling sessions for Mrs. Patricia Fink, the accused's wife and Angela's mother.

(5) During one of these sessions in mid-December, Mrs. Fink said the relationship with her husband had not gone well and that at times he would leave their bed and go to Angela's bedroom.

(6) She also told Doctor Shields that the accused told her to change her story about child abuse and the family.

(7) She also told Doctor Shields that her husband was in the quarters on the weekend of 10 December.

Now, with respect to residual hearsay, I find that Mrs. Fink is available to testify and be cross-examined. Proper notice was given by the government to the defense with respect to the use of this evidence.... I find that the statements made to Doctor Shields are more probative on the point for which they are offered than any other evidence which the proponent can procure through reasonable efforts. I find that the statements are offered as evidence of material facts.

With respect to whether the statements have equivalent circumstantial guarantees of trustworthiness, I find:

(1) The statements are brief and detailed.

(2) They are against the pecuniary interests of Mrs. Fink and her family.

(3) Mrs. Fink had no reason to lie against her husband.

(4) The statements are corroborated by Angela's statements.

(5) The statements are corroborated by the testimony of Sergeant Major Ashley [who testified he saw the appellant at the Fink quarters on the weekend of 10 December].

(6) They are made close in time to the event, that is, two days later with respect to the presence of the accused in the quarters. Based on the foregoing, I find the statement of Mrs. Fink to Doctor Shields had equivalent circumstantial guarantees of trustworthiness. I further find that the general purpose of these rules and the interests of justice will be served by their admission into evidence.

We hold that the military judge did not abuse his discretion in admitting the statements of Mrs. Fink as residual hearsay under Mil.R.Evid. 803(24).

F. Angela's Statement to MAJ Shields

 Angela repeated her allegations of sexual abuse to MAJ Shields at their first meeting three days after the initial reports of sexual abuse made to the school nurse and the pediatrician. In a later counseling session, Angela said that her father had visited the family quarters and told her to change her story. The military judge ruled that these statements "approximate the medical exception" and were admissible as residual hearsay under Mil.R.Evid. 803(24).[3] Many of his findings of fact regarding Mrs. Fink's statement are likewise

---

3. The child's disclosures to MAJ Shields appear, at least initially, to have been motivated by a desire for help with her problem. The statements at the initial interview may amount to statements made for medical diagnosis or treatment under Mil.R.Evid. 803(4), especially in light of the victim's limited cognitive ability. See *United States v. Armstrong*, 30 M.J. at 772; *United States v. Cottriel*, 21 M.J. at 536–37.

applicable to Angela's statement. In addition, the military judge found that Angela's statements were unrecanted and consistent with other statements made either by her or by her mother. We agree with his findings of fact and law, and hold he did not abuse his discretion in admitting Angela's statements to MAJ Shields.

We have considered the issue personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), in which he alleges ineffectiveness of counsel by his trial defense counsel for not calling Angela's teacher as a witness. We have considered the affidavit filed by the defense counsel and, applying the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), find that the issue is without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.