UNITED STATES

v.

Airman First Class Lindell K.
PEARSON, FR569–19–1939,
United States Air Force.

ACM 28547.

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 March, 1990.

Decided 22 Nov. 1991.

**914**

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Colonel Jeffrey R. Owens, and Captain Michael D. Burt.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain Thomas E. Wand.

Before HODGSON, McLAUTHLIN and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

HODGSON, Senior Judge:

Sergeant Michael Berry lived in the barracks on Davis–Monthan Air Force Base and is appellant's friend and co-worker. On 13 July 1989, Berry made plans to play bingo with his girlfriend who had a 6–year old boy, Jimmy.[1] Berry asked the appellant, who had done so in the past, to babysit Jimmy while Berry and Jimmy's mother played bingo. The appellant, who had been drinking, initially said no but eventually agreed to watch the boy after Berry told him there was a twelve-pack of beer in Berry's room. Jimmy was left with the appellant at about 1900.

The appellant watched Jimmy until about 2200 when Jimmy's mother and Berry returned to the barracks to get him. The appellant was slow answering his door. When it opened, Jimmy was sitting in the middle of the room and appeared "pale and scared." When his mother indicated it was time to go, he ran to Berry and "hugged"

1. This is not the child's real name.

his legs. As they were leaving, Jimmy's mother noticed that the zipper on appellant's pants was open.

Jimmy, Jimmy's mother, and Berry returned to Berry's room where Jimmy acted unusually subdued. The first time the appellant baby-sat Jimmy, the child was very enthusiastic about the appellant and would not stop talking about him.

After Jimmy and his mother returned home, she noticed his hands were shaking as he tried to eat. She sensed something was wrong and asked what it was. At first he refused to tell her, saying, "If I tell you mommy, Lindell (appellant) get mad at me." Eventually, he told her that he and the appellant played "new games" where they "took their clothes off," and the appellant put his "titi" in his mouth and "puet." "Titi" appears to be the child's term for penis and "puet" his word for anus. Jimmy also indicated that when he cried, the appellant turned the stereo up louder. When Jimmy's mother undressed him she noticed that his underwear was inside out.

At trial Jimmy hesitantly testified as to the nature of the appellant's sexual misconduct. In a pretrial statement taken after the proper warnings, the appellant denied any sexual activity with Jimmy but surmised that if it did take place it was because he was "out of his mind" or "drunk."

The military judge, sitting without members, found the appellant guilty of forcible sodomy with a child under the age of 16 years. The approved sentence consisted of a bad conduct discharge, 36 months confinement, forfeiture of $400.00 pay per month for 36 months, and reduction to E–1.

## EXCITED UTTERANCE

Appellate defense counsel argue that the trial judge erred in admitting Jimmy's statement to his mother as an "excited utterance" because it lacked the requisite spontaneity to qualify as an exception to the hearsay rule. Appellate counsel point out that the statement was "made hours after the incident allegedly occurred" and was not a spontaneous declaration but

was the result of questioning by his mother.

██ Mil R.Evid. 803(2) was taken without change from its Federal counterpart and states:

> (2) *Excited Utterance:* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

To qualify as an excited utterance the declarant must (1) have experienced a startling event or condition and (2) reacted while under the stress and excitement of the event and not from reflection and fabrication. *See generally United States v. Cox,* 11 M.J. 795 (A.F.C.M.R.1981), *pet. denied,* 12 M.J. 115 (C.M.A.1981). Jimmy's earlier testimony at trial, his emotional state while in the appellant's room and later with his mother, together with the circumstance that the child's underwear was reversed, was sufficient to allow the trial judge to conclude that a startling event had occurred.

With regard to the appellant's claim that the time between the alleged startling event and the out-of-court statement was too long to make the statement spontaneous, the Eighth Circuit held in *United States v. Iron Shell,* 633 F.2d 77, 85 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), that "the lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2)." In *Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir.1988), the Fourth Circuit went further and stated:

> Indeed, much criticism has been directed at courts which place undue emphasis on the spontaneity requirement in child sexual abuse cases.... Even if the child is aware of the nature of the abuse, significant delays in reporting this abuse may occur because of confusion, guilt, and fear on the part of the child. [Footnote citations omitted.]

The decision went on to indicate that the time between the abuse and declaration must also include the child's first real opportunity to report the incident. *See also Kilgore v. State,* 177 Ga.App. 656, 340 S.E.2d 640 (1986).

Here, while the abuse allegedly occurred between 1900 and 2200 hours, Jimmy's first real opportunity to tell of the incident occurred after he was home with his mother. The period of time, i.e., 3 hours between the event and the reporting of it, was reasonable. *United States v. Arnold,* 25 M.J. 129 (C.M.A.1987); *See Morgan v. Foretich, supra.* Courts have recognized that stress is often present for a longer period in a young child than in an adult. Accordingly, a child is likely to repress the incident and speak of it only when asked by a person the child trusts. *United States v. Lingle,* 27 M.J. 704 (A.F.C.M.R.1988), *pet. denied,* 28 M.J. 455 (C.M.A.1989). Here, Jimmy was reluctant to tell what had happened because of his fear that it might make the appellant "mad." He told his mother because he trusted her.

██ The appellant's claim that the declaration was not spontaneous, but was obtained through questioning is not a barrier to its admission. A child's excited utterance may be in response to a question or series of questions. *United States v. Iron Shell, supra; People v. Jones,* 155 Cal. App.3d 653, 202 Cal.Rptr. 289 (1 Dist.1984); *State v. Plant,* 236 Neb. 317, 461 N.W.2d 253 (1990); *Commonwealth v. Galloway,* 302 Pa.Super. 145, 448 A.2d 568 (1982); *see also United States v. Lingle, supra.* The trustworthiness of the declaration is what is important. Jimmy's statement to his mother was in the vocabulary of a young child and his youth and naivete enhance the reliability of his utterance. It is highly unlikely under the facts presented that the statement was fabricated.

██ The admission of an excited utterance is within the sound discretion of the trial judge, and his or her ruling on such an issue will be overturned only when there has been a clear abuse of discretion. *See generally United States v. LeMere,* 22 M.J. 61 (C.M.A.1986), *United States v. Iron Shell, supra; United States v. Whitney,* 18 M.J. 700 (A.F.C.M.R.1984). The trial

judge's ruling in this matter was correct, and no basis exists to overturn it.

## SUFFICIENCY OF THE EVIDENCE

■ The appellant claims that his conviction was based solely on the testimony of a 6-year-old child which was uncorroborated by any other direct evidence. He acknowledges that some aspects of the government's case, i.e., belatedly opening the door of his room with his pants fly open, the mother discovering that her child's underwear was reversed, and the boy's general subdued behavior which was out of character for him, might be suspicious, but argues that these circumstances, together with the alleged victim's hesitant trial testimony, do not amount to proof beyond a reasonable doubt. He asks that we exercise our mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and set aside his conviction.

In addition to the child's testimony and the circumstantial evidence briefly set out in the preceding paragraph, the record also contains a declaration by the victim, shortly after the incident, wherein he told his mother what the appellant had done to him.

In addressing appellant's evidentiary challenge, we must determine not only the legal sufficiency of the evidence but also its factual sufficiency.

> The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner,* 25 M.J. 324, 324–325 (C.M.A.1987).

Applying the tests for legal and factual sufficiency to the evidence of record, we conclude that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. In addition, we are independently convinced beyond a reasonable doubt of the appellant's guilt. Article 66(c), UCMJ; *see also United States v. Stidman,* 29 M.J. 999 (A.F.C.M.R.1990).

## INVITED ERRORS

■ Appellant invites our attention to two occurrences at trial he contends caused him "substantial prejudice." The first is a witnesses' reference to the fact that appellant had been interviewed and examined by an Air Force Office of Special Investigations (AFOSI) agent assigned to the regional polygraph office at Norton Air Force Base, California. Admitting that the prosecutor did not seek to introduce the results of any polygraph examination, appellant nevertheless concludes, "it was painfully obvious" from this testimony "that appellant had taken a polygraph test and had not passed."

We do not reach the same conclusion. We are confident that the experienced military judge put the passing reference, to which trial defense counsel did not object, into proper context. R.C.M. 801(g).

In a second invited issue, appellant points to the military judge's "willingness to hear prosecution's evidence on sentencing before the government had ... rested its case on the findings." This, the appellant argues, shows the military judge's demonstrated predisposition regarding findings in this judge-alone trial. Again, we do not agree.

■ The military judge has discretionary control over the order of the proceedings. *See* R.C.M. 801(a) *and* Mil.R.Evid. 611. However, the proposal—to move a sentencing expert witness forward for the sake of judicial economy and to accommodate the witnesses' schedule—never took place. Had he heard the witness, the trial judge explained that he would not hold any impact-type testimony against the appellant in any way for purposes of findings. Nevertheless, appellant contends that the military judge's expressed "willingness" to hear this witness early shows he had already "made up his mind the appellant was

guilty." The record does not support appellant's inference. In addition, since he voiced no challenge at trial, appellant has waived his right to challenge the trial judge on appeal. *See United States v. Airhart,* 23 U.S.C.M.A. 124, 48 C.M.R. 685 (1974); *cf. United States v. Harris,* 530 F.2d 576 (4th Cir.1976).

### SENTENCE APPROPRIATENESS

■ Appellant suggests that a punitive discharge and 3 years confinement "is too harsh in light of the circumstances ... and the unique characteristics of the appellant." He asks that the sentence be "significantly reduced." We conclude, however, that the approved sentence is not inappropriate for the forcible sodomy of a 6-year-old boy, taking due consideration of appellant's particular circumstances and all the other relevant factors. Article 66(c), UCMJ.

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Judges McLAUTHLIN and JAMES concur.