UNITED STATES

v.

**Sergeant Scott A. GRANT, FR269–70–0721, United States Air Force.**

**ACM 30119.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 9 May 1992.

Decided 10 Dec. 1993.

Appellate Counsel for the Appellant: Captain Robert I. Smith (argued), Colonel Terry J. Woodhouse, and Lieutenant Colonel Jay L. Cohen.

Appellate Counsel for the United States: Major Barnard N. Madsen (argued), Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Lieutenant Colonel Thomas E. Schlegel, Major Paul H. Blackwell, Jr.

Before SNYDER, RAICHLE, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Senior Judge:

Sergeant Grant, contrary to his pleas, was convicted of rape and attempted sodomy, and committing an indecent act upon his 6–year–old stepdaughter, H.[1] Appellant has submitted five assignments of error, all of which we find are without merit.

### I. DENIAL OF CONTINUANCE

#### A. Facts

Appellant avers the military judge abused his discretion by denying a defense request for continuance, thereby depriving appellant of his civilian counsel of choice. We disagree.

Appellant's detailed military defense counsel was Captain K. The original trial date was 25 February 1992. A mental evaluation of appellant requested by Captain K resulted in a continuance from 25 February 1992 to 26 March 1992. In February 1992, appellant's parents retained Mr. J to represent him. At that time, Mr. J knew he was facing disciplinary action by his bar association. He had appealed his initial penalty of 2 years' suspension from the practice of law to the Supreme Court of Washington, whose decision was pending, when he accepted this retainer. When the trial convened on 26 March 1992, Mr. J's suspension was reduced by the Supreme Court of Washington to 60 days and 2 years probation. Captain K requested a 60 day continuance to 1 June 1992 to allow Mr. J's suspension to expire and to allow for Captain K's availability. Further, Captain K informed the military judge that appellant was willing to remain in pretrial confinement and waive any accountability the government may have for speedy trial purposes in order for Mr. J to serve his suspension.

Mr. J advised the military judge[2] that his attorney had requested a 1–week stay in the effective date of his suspension to allow him time to wind down his practice, but he directed his attorney to withdraw the request. He also advised that he had three personal and two telephone conferences with appellant, had obtained a copy of the case file from Captain K, reviewed the video interviews of H, and conferred with Captain K in person and telephonically. Mr. J arranged for other attorneys to take over representation of a number of his clients, but he did not seek to refer appellant to another attorney. He informed the military judge he could prepare for future work during the suspension, but he could not hold himself out as an attorney nor practice law during the suspension.

After ascertaining Captain K was fully familiar with and prepared to defend appellant's case, and making allowances for Captain K's schedule, the military judge granted a continuance until 7 April 1992. Upon convening on 7 April 1992, however, appellant informed the military judge he released Captain K on 1 April 1992 because "I'm very unhappy with Captain [K's] performance as my defense counsel." The Chief Circuit Defense Counsel of the circuit concerned agreed to detail another military counsel, Captain S. Because of his recent detailing to represent appellant, Captain S was not prepared to proceed to trial and requested a delay. Further, he advised the military judge appellant still desired Mr. J's services and requested a continuance sufficient to allow that. The military judge adhered to his ruling denying a continuance until Mr. J's suspension expired and set trial for 30 April 1992.

As of 24 April 1992, appellant had retained another civilian counsel, Mr. K. To allow for adequate preparation by Mr. K, an additional continuance from 30 April 1992 to 6 May 1992 was granted. Trial

---

1. Violation of Articles 120, 80, and 134, UCMJ, 10 U.S.C. §§ 920, 880, and 934 (1988). He was sentenced to a dishonorable discharge, confinement for 18 years, and reduction to E–1. To comply with the pretrial agreement, the convening authority limited the reduction to E–2, but otherwise approved the sentence.

2. Because of his suspension, Mr. J was present in court, but seated in the spectator section. During this session, the military judge took information from Mr. J orally and under oath.

commenced on 6 May 1992, but appellant again voiced his desire that Mr. J be part of his defense team. On the other hand, he did not voice any dissatisfaction with the services of either Captain S or Mr. K. Neither Captain S nor Mr. K asserted the need for additional time to adequately represent appellant.

Prior to issuing his 26 March 1992 ruling, the military judge entered extensive essential findings of fact, many of which are set forth *supra*. He found in part:

> Most of the government's witnesses are in the local area. The alleged victim in the case is a 7–year–old girl who is currently living with a foster family.... Captain K would be prepared to start the trial in two weeks.

> The American Bar Association Model Rules of Professional Conduct, Rule 5.5, prohibits the unauthorized practice of law. Rule 5.5 says a lawyer will not assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law. This prohibition applies to Captain K. In the opinion of the court, both defense counsel can work independently of one another, and only Captain K can advise or confer with the accused during the suspension period. If counsel work together on the case during the suspension period, they will both be violating Rule 5.5.

> The accused has been in pretrial confinement since 3 January 1992, although he expressed a willingness to stay there in order to have a trial date of 1 June 1992. There has been one continuance in this case already from 25 February 1992 to 26 March 1992. The alleged victim in this case is a 7–year–old girl who is coping with all of the emotional issues involved in a sexual molestation case and has been placed in a foster home. A lengthy delay will not only inconvenience the witnesses, but may have a direct impact on the memory of a 7–year–old witness to accurately recall the events. Although the accused has retained Mr. J, and he has established an attorney-client relationship, Mr. J is no longer a practic-

ing attorney until 17 May 1992. This is analogous for purposes of scheduling this trial to a busy practitioner who is unavailable for a lengthy time period because of his schedule. *This case is different though, because unlike the busy practitioner, Mr. J is unable to confer with either his client or co-counsel until 17 May 1992.* Finally, Captain K can be available for trial within two weeks.

> Decision: Balancing all of these factors, it is the decision of this court to deny your request for a continuance until 1 June 1992. I am granting you a delay until 7 April 1992. I am not severing the attorney-client relationship between Mr. J and the accused.

(Emphasis added).

█ Where the trial judge's findings of fact are supported by the evidence of record we fully accept them, unless clearly erroneous. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985). In the instant case, except where specifically indicated, we find the trial judge's factual findings and conclusions fully supported by the evidence of record.

### B. Discussion

█ Our standard of review on this issue is abuse of discretion. *United States v. Browers*, 20 M.J. 356 (C.M.A.1985). When testing for an abuse of discretion, this Court does not substitute its judgment for the military judge's. More than a difference of opinion is necessary to constitute an abuse of discretion. Instead, this Court tests for whether the ruling is arbitrary, clearly unreasonable, or clearly erroneous. *United States v. Andrews*, 36 M.J. 922 (A.F.C.M.R.1993); *see United States v. Pabon*, 37 M.J. 836 (A.F.C.M.R.1993).

█ A military judge may grant a continuance whenever fairness renders it appropriate. Article 40, UCMJ, 10 U.S.C. 840 (1988); RCM 906(b)(1). In view of the military judge's responsibility to insure a court-martial is conducted in a fair, orderly, and efficient manner, wide latitude is accorded him or her in order to facilitate an often difficult and, as reflected in the in-

stant case, delicate task. *Browers,* 20 M.J. at 361 (Cox, J., concurring). Consequently, the decision to grant or deny a continuance is within the military judge's broad discretion and, absent a *clear* abuse of that discretion, the military judge's decision will not be overturned. *United States v. Thomas,* 22 M.J. 57 (C.M.A.1986). Whether a military judge has exercised his discretion in a judicially tempered manner is determined by the nature of the competing interest or right and how the military judge balanced the competing facets of the case in question *at the time the continuance is requested, Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *See Gandy v. Alabama,* 569 F.2d 1318 (5th Cir.1978); the number of prior delays granted; and the timeliness and stage in the proceedings the continuance is requested. *See United States v. Dresen,* 36 M.J. 1103 (A.F.C.M.R.1993) and cases cited therein. The primary competing interest in this case is appellant's right to the assistance of civilian counsel of his choice.

■ The right to the assistance of prepared and effective counsel is a fundamental right. U.S. CONST. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord United States v. Scott,* 24 M.J. 186 (C.M.A. 1987). Under the UCMJ, the right to counsel is, in significant respects, broader than that of the sixth amendment. Article 38, UCMJ 10 U.S.C. § 838; *United States v. Gnibus,* 21 M.J. 1 (C.M.A.1985). This additional breadth notwithstanding, the right to counsel of choice, including civilian counsel of choice, is not absolute and must be balanced against the need for the expeditious administration of justice. *Thomas,* 22 M.J. at 59; *United States v. Montoya,* 13 M.J. 268 (C.M.A.1982). A proper exercise of discretion should also include a balancing of the impact on the witnesses or victim, whether the lead counsel has an associate who is adequately prepared to try the case, and whether there are unique factors present. *See Gandy,* 569 F.2d at 1324.

■ When we test the military judge's ruling against these principles, we find no abuse of discretion in his denying the continuance. In addition to his extensive findings of fact, of which only a portion are set forth above, the military judge set forth all of the salient precedents on the issue of granting or denying continuances and applied the holdings and teachings of those precedents in reaching his ruling. He properly stated on the record the competing factors to be balanced.

The record amply demonstrates the military judge did not deny the continuance because of mere administrative inconvenience to the government. *Cf. United States v. Wilson,* 28 M.J. 1054 (N.M.C.M.R. 1989) (government did not oppose delay, no prior delays involved, and civilian counsel withdrew due to inadequate preparation). Instead, he weighed the potential impact of the requested continuance on the 7–year–old victim.[3] Further, the record compellingly reflects the military judge's weighing of the fact that, due to Mr. J's suspension and its impact, Mr. J could not meaningfully prepare for trial during his suspension period. Because Mr. J could consult with neither appellant nor Captain K during the suspension, an additional continuance would have been required *after* the suspension period. The military judge's assessment of this factor hardly reflects a myopic insistence on expeditiousness, but a delicate balancing of *all* factors. *See Thomas,* 22 M.J. at 59. Captain K was intimately familiar with the case and adequately prepared to defend it.

Other indicia of the military judge's judicial temperament on this issue are his liberality in granting continuances to allow adequate preparation by Captain S and Mr. K. *Cf. United States v. Thomas,* 33 M.J. 694 (A.C.M.R.1991) (civilian counsel with extensive involvement in case denied con-

---

**3.** We note the military judge did not require evidence on this matter and we again caution trial participants that averments of counsel are not evidence. In the instant case, however, the defense did not object or dispute trial counsel's proffer regarding victim impact. Accordingly, we accept the military judge's finding thereon. *See United States v. Alexander,* 32 M.J. 664, 667 n. 3 (A.F.C.M.R.1991), *aff'd,* 34 M.J. 121 (C.M.A. 1992).

tinuance to obtain witness and withdrew from case; second civilian counsel denied continuance to prepare). We also take note of the fact that Mr. J knew he was pending probable suspension when he accepted the retainer. Appellant knew of the suspension in sufficient time to retain other civilian counsel, which he eventually did. Further, Mr. J provided no explanation why he arranged for other of his clients' cases to be assumed by another attorney, but not appellant's. Our assessment of the military judge's actions are not affected by the fact that only 2 weeks remained of Mr. J's suspension by the time trial actually convened.[4] His balancing of the prevailing factors remained valid, especially Mr. J's temporary disqualification from the practice of law. We conclude the military judge struck the proper delicate balance in his ruling and did not abuse his discretion.[5]

## II. ADMISSIBILITY OF HEARSAY

### A. Excited Utterance

Appellant next avers that the military judge erred when he ruled a statement made 36–48 hours after an event and after the stress of the event had dissipated was admissible as an excited utterance. We find the military judge erred only with respect to the proper basis of admissibility. We find no abuse of discretion in admitting the evidence.

The statement in question was made by H to Mrs. Phillips while R, H's sister, and appellant were Mrs. Phillips' guests for Christmas dinner. Mrs. Phillips had sent H and the other children outside to play. While she was upstairs attending to her infant, H came to her room and lay down beside her looking very sad and teary-eyed. Without any prompting, H asked Mrs. Phillips if she knew what happened to her and her dad? H told Mrs. Phillips appellant kissed her. Mrs. Phillips responded with "all parents kiss their children," then she kissed her infant and asked H if that was the type of kiss. When H said no, Mrs. Phillips then kissed H on the wrist. H then proceeded to tell her appellant kissed her all over her body, pulled down her panties, and rubbed his penis on her front and her bottom. Mrs. Phillips asked H when these acts occurred, yesterday, 2 days ago, last night or today, or this morning? H responded, "2 days ago."

After making extensive findings, the military judge concluded:

Here, even though at least 36 hours had passed before the victim's first statement was made, the lapse of time between the startling event and out-of-court statement, although relevant, is not dispositive in the application of Rule 803(2). I am convinced by the facts and circumstances of this case that the girl's unsolicited, spontaneous statement to Mrs. Phillips are the first available opportunity and were indeed excited utterances ... [T]he victim was acting under the influence of the alleged sexual assault and as the analysis to MRE 803(2) to the Manual for Courts–Martial says, fresh complaint of a sexual offense may come within the exception for excited utterances depending on the circumstances. I believe this is just such a case. [H] was 7–years–old at the time. The opportunity to talk to her mother alone was minimal to non-existent. Her mother, who had promised to protect her, let the accused move back into the home, potentially violating her promise in the mind of H. Her babysitter, Tina, was new and unknown. Mrs. Phillips was the

---

**4.** A substantial portion of this additional delay was occasioned by appellant's release of Captain K, who had represented appellant since the case's inception. Although the military judge's questions of Captain S clearly reflected he suspected appellant released Captain K in bad faith to manipulate the court's docket, he did not make a specific finding to that effect. *Cf. United States v. Dresen*, 36 M.J. 1103 (A.F.C.M.R. 1993) (military judge specifically found accused's release of both detailed counsel on day

of trial was done in bad faith to delay proceedings). Therefore, we view it as merely a defense delay and not one requested in bad faith.

**5.** Our decision does not rest on Mr. J's good standing or absence thereof. With regards to Senior Judge James' concurring opinion, however, *see* Air Force Regulation 111–1, *Military Justice Guide*, paragraphs 8–7, 8–8 (1990).

first adult who she had a real opportunity to talk to about the alleged offense. An argument can be made that the alleged victim was not under the stress of the startling event, but was only drawing upon a sad memory. The interceding events of opening presents on Christmas, in my opinion, blunt the stress, but once removed the stress returned. This is a close issue, however, I believe that it does qualify as an excited utterance under MRE 803(2).

■■■ Hearsay is any out-of-court statement offered in evidence to prove the truth of the matter asserted. Mil.R.Evid. 801(c). Hearsay is not admissible except as provided by the Mil.R.Evid. or any act of Congress applicable to courts-martial. Mil. R.Evid. 802. Regarding the basis in issue before us, the rule states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Mil.R.Evid. 803(2). The excited utterance exception to the hearsay rule is considered one of the "firmly rooted" hearsay exceptions. *United States v. Arnold*, 25 M.J. 129 (C.M.A.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *Cole v. Tansy*, 926 F.2d 955 (10th Cir.1991); *Webb v. Lane*, 922 F.2d 390 (7th Cir.1991). The basis for the rule is that a person is less likely to fabricate a statement when laboring under the stress and excitement of a recent startling event. A military judge's evidentiary ruling on a statement's admissibility is reviewed for an abuse of discretion. *United States v. LeMere*, 22 M.J. 61 (C.M.A.1986); *United States v. Pearson*, 33 M.J. 913 (A.F.C.M.R.1991).

■■■ To qualify as an excited utterance, there must have been a startling event, and the statement must have been a product thereof. *LeMere*, 22 M.J. at 67. The statement must be "spontaneous, excited or impulsive rather than the product of reflection and deliberation." *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). It is not necessary for a statement to be made contemporaneous with the occurrence of the startling event to be admissible as an excited utterance. However, the statement must be made contemporaneous *with the excitement or stress caused by the event or condition*. *Arnold*, 25 M.J. at 132; *United States v. Moore*, 791 F.2d 566 (7th Cir.1986). Naturally, as time passes, a person is less likely to be laboring under the stress or excitement of the event in question.

■■■ The lapse of time between the event and the out-of-court statement is not dispositive, but a factor to be weighed. *Pearson*, 33 M.J. at 915. As the period of elapsed time between the startling event and the statement increases, the more other factors bear on the issue of reliable spontaneity. Some of the areas impacting the determination are: the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. Further, as the age of the declarant decreases, the more elastic the elapsed time factor, within reason. *Iron Shell*, 633 F.2d at 86.

H's statement was made 36–48 hours after the event, which exceeds the outer limits of statements previously allowed as an excited utterance.[6] That factor, standing alone, however, does not dictate our result, for the passage of time is but one factor. This is especially so with a child of tender years, because a child often is not aware of the wrongfulness of the act. *Pearson*, 33 M.J. at 915; *Iron Shell*, 633 F.2d at 86. However, due to H's earlier molestations by appellant and his moving out of the home as a result, H fully appre-

---

6. *See* Annotation, *Time Element As Affecting Admissibility of Statement Or Complaint Made By Victim Of Sex Crime As Res Gestae, Sponta-* *neous Exclamation, Or Excited Utterance,* 89 A.L.R.3d 102 (1979).

ciated the wrongfulness of appellant's actions. In view of the passage of 36–48 hours, H's prior opportunities to report her trauma and her demeanor while relating it to Mrs. Phillips become more critical. *See Morgan v. Foretich,* 846 F.2d 941 (4th Cir. 1988).

 Opinions may clash on how much excitement or hysteria is necessary to qualify as an excited utterance. *See Arnold,* 25 M.J. at 133 n. 4. The shades of gray are crucial, for they impact whether the statement was made *as a result of the event* or merely as recall or reflection. An excited utterance cannot be the product of deliberation or reflection. *Webb v. Lane,* 922 F.2d 390. While hysteria is not indispensable, there must, nonetheless be indicia of stress or excitement linked to the event. In *Arnold,* though calm, the child's hands were shaking and his demeanor and eating were abnormal. In *Iron Shell,* though talking calmly, the child acted nervous and scared. Although H was saddened while relating the incident to Mrs. Phillips, she was calm and resigned. Our Army brethren have held that depression does not equate to excitement, and ruled a statement made while saddened was not an excited utterance. *United States v. Fink,* 32 M.J. 987 (A.C.M.R.1991). During oral argument, appellant urged that we find "being sad and teary eyed is not enough." Under the facts of the instant case, we agree.

Because Mrs. Grant worked two jobs which allowed her only minimal presence in the home with H and her sister, the military judge found her visit to Mrs. Phillips' was her first opportunity to report the event. However, we find the weight of the evidence does not support this conclusion. Mrs. Grant's busy schedule notwithstanding, H had adequate opportunity on Christmas Eve and Christmas Day to report the event to her mother. Mrs. Grant testified to occasions when she and H were alone while she was either taking them to or from the babysitter. In fact, we find H made a conscious decision not to tell Mrs. Grant about the event. Mrs. Grant testified that when she asked H why didn't she tell her, H replied she did not want her and appellant to argue anymore. This is not consistent with spontaneity caused by stress.

Our assessment of the circumstances surrounding the statement convinces us it was not made while under the stress or excitement of the event, but the product of sad reflection. We note the military judge's finding that the stress of the event had been blunted. However, our conclusion does not mean we find H's statement unreliable or untrustworthy. We now address its admissibility under the residual hearsay rule.

### B. Residual Hearsay Rule

 H's statement was offered under Mil.R.Evid. 803(2) and (24), and the military judge entered findings and rulings on both bases. Therefore, we are not precluded from considering admissibility under the alternative basis, the military judge's rejection thereof notwithstanding. *United States v. Alexander,* 34 M.J. 121 (C.M.A. 1992); *Fink,* 32 M.J. at 990 n. 2; *Cf. United States v. Jones,* 30 M.J. 127 (C.M.A. 1990) (Cox, J., concurring) (Government did not rely on residual hearsay as basis for admission and notice requirements not complied with).

A statement is admissible under Mil. R.Evid. 803(24) when:

> [N]ot specifically covered by any of the [other hearsay] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The military judge's findings set forth in Part II–A, *supra,* also were applicable to admissibility under Mil.R.Evid. 803(24). As specifically pertains to that basis, he also found:

In the case at bar, the declarant is available, has testified, but has no recollection of the statement.... The statement offered is evidence of a material fact, specifically that the accused committed indecent acts and possible sodomy on her on 23 December 1991, which are the charged acts in Charge II, specification 2, and the Additional Charge, specification 2. Two, the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The government has attempted to elicit this information from the alleged victim, but she does not recall either the conversation or the events of 23 December 1991.

Three, the question; however, still exists whether the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. The analysis here is whether there are guarantees of trustworthiness, which involve only those facts that surround the making of the statement and that render the declarant particularly worthy of belief ... The more closely the statement is to a firmly rooted or accepted hearsay exception, the more likely the statement is admissible under the residual hearsay rule.... I do not believe that the facts surrounding the making of the statement have the necessary guarantees of trustworthiness to qualify for admission under MRE 803(24), the residual hearsay rule.

The military judge applied the correct legal standard of looking solely to the surrounding circumstances under which the statement was made. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).[7] As reflected above, the military judge did not articulate the basis on which he found the facts surrounding H's statement to lack trustworthiness and, because his findings support trustworthiness, we cannot discern his basis from our re-

view. At any rate, because we find his conclusion contrary to the facts as found by him, we believe the statement qualifies for admission under Mil.R.Evid. 803(24).

We frame the issue as did Judge Cox in *Jones:* whether the spontaneous, *unsolicited* statement of H enjoys the same degree of reliability and trustworthiness as the foregoing exceptions, such that the declaration had the "equivalent circumstantial guarantees of trustworthiness" and reliability. *See Jones*, 30 M.J. at 132 (Cox, J., concurring). Our review of the facts convinces us of the circumstantial guarantees of trustworthiness of the statement.

H's statement was not one made to investigators or other persons seeking information specifically related to the charges. Instead, it was made in a non-threatening home environment. Mrs. Phillips had no bias against appellant, and she was not seeking or probing for information. Even when H told Mrs. Phillips appellant kissed her, Mrs. Phillips responded that all parents kiss their kids and offered two innocent alternatives by kissing her infant and H's wrist and asking H, "you mean like that." Without any prodding, H provided further details to inform Mrs. Phillips appellant's kisses were not innocent parental kisses. Although we find H was not under excitement caused by the event, the facts reflect her statement certainly was triggered by emotion.

The instant case is one where the statement's very close resemblance to an excited utterance enhances its trustworthiness and admissibility under Mil.R.Evid. 803(24). *United States v. Quick*, 22 M.J. 722 (A.C.M.R.1986), *aff'd*, 26 M.J. 460 (C.M.A. 1988). Therefore, we find H's statement does possess the necessary equivalent circumstantial guarantees of trustworthiness. In view of our agreeing with the military judge's finding that the requirements of Mil.R.Evid. 803(24)(A), (B), were satisfied,

---

7. H testified at trial and was cross-examined by trial defense counsel. Consequently, appellant's sixth amendment right to confrontation was not an issue. Nonetheless, we will not address the issue of whether *Idaho v. Wright* applies in such

situations, *see United States v. Martindale*, 36 M.J. 870 (N.M.C.M.R.1993), but will assume it does, and look solely to the circumstances surrounding H's making the statement to Mrs. Phillips.

we must now determine if the necessity requirement of 803(24)(C) is satisfied.

Although availability of the declarant of a hearsay statement does not preclude its admissibility under Mil.R.Evid. 803(24), the statement must be necessary to the case in question to qualify even though reliable. *United States v. Giambra*, 33 M.J. 331 (C.M.A.1991). Five and one-half months elapsed between appellant's offense with H and his trial. During her testimony, H could not recall all of the events surrounding the offenses in issue. This is not unique in children of H's age, whose memory is not yet fully developed. Because no means of securing the evidence contained in the statement was available to the Government other than via Mrs. Phillips' testimony, we believe the purposes of the Mil.R.Evid. and the interest of justice were served via its admission. Accordingly, we will consider it.

### III

 Appellant also avers that, because there is insufficient evidence of corroboration, the military judge erred by admitting his confession. We disagree. Appellant's specific basis of contention is that H's testimony did not corroborate penetration of her vagina. We do not believe that is necessary to corroborate appellant's confession. To be admissible, a confession's essential facts must be sufficiently corroborated to justify sufficiently an inference of their truth. Mil.R.Evid. 304(g). The amount of evidence necessary to accomplish this is slight. *United States v. Maio*, 34 M.J. 215 (C.M.A.1992); *United States v. Melvin*, 26 M.J. 145 (C.M.A.1988). H testified that appellant would get in her bed and he rubbed his penis against her vagina. This constitutes more than slight corroboration of appellant's confession, both quantitatively and qualitatively. *See Maio*, 34 M.J. at 223 (Wiss, J., concurring).

### IV

 Appellant's penultimate assignment of error is that the evidence is legally and factually insufficient to sustain the findings of rape. To find a conviction legally sufficient, this court must determine that, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). To find a conviction factually sufficient, we must determine that, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

 Legal sufficiency need not long detain us. There is sufficient evidence in the record from which a reasonable factfinder could find guilt beyond a reasonable doubt. Appellant asserts two main bases of factual insufficiency: appellant's confession is absurd and incredible and should be disregarded in its entirety, and, even assuming penetration occurred, there is no evidence that it was done by force and without consent.[8] As for appellant's first basis, we simply find appellant's claim that his clothed penis accidentally penetrated H's vagina when she jumped on him while they happened to be in bed together unworthy of significant weight. However, we do believe his admission that he penetrated her vagina, and we are convinced it was not accidental. In view of H's age, we do not find consent. Accordingly, penetration alone is sufficient force. MCM, Part IV, paragraph 45(c)(1)(b) (1984); *United States v. Palmer*, 33 M.J. 7 (C.M.A.1991). Our review of the evidence convinces us, beyond reasonable doubt, of appellant's guilt.

### V

 With regards to appellant's claim that his sentence is inappropriately severe,

---

8. Appellant's foundation for this argument is the absence of H's age in the specification. He also argues the Government's failure to plead her age also precludes our approving the lesser of-fense of carnal knowledge, citing *United States v. Hickson*, 22 M.J. 146, 154 n. 11 (C.M.A.1986). Our disposition of this issue renders it unnecessary to address it.

we have given individualized consideration to appellant, including the nature and seriousness of the offenses and the character of his service. We do not find the sentence inappropriate. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982); Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

The findings and sentence are correct in law and fact and are hereby

AFFIRMED.

Senior Judge RAICHLE concurs.

JAMES, Senior Judge (concurring in the result):

I concur in the result. I would decide the assignment relating to the "excited utterance" solely on the grounds that the ruling was within the military judge's discretion. I would treat the continuance issue differently.

Military lawyers become focused on problem-solving by their training, experience, and professional development. The military judge in this case tried to address more issues than were really his problems to solve, and that distracted him from the correct analysis. The dispositive question in this case was whether the lawyer was qualified to practice in a court-martial on March 26, 1992. The views and orders of his state bar association, and its likely reaction to further practice by the lawyer in a federal court during the suspension, were all matters of concern to the lawyer and to the state bar association, but not to the military judge.

The qualifications required of a civilian lawyer to practice in a court-martial are stated at R.C.M. 502(d)(3). They are incredibly generous: A civilian lawyer need only be a *member* of either the bar of *any* federal court or of the highest court of *any* state. The rule does not require good standing and does not address suspensions and similar complications. Neither does the statutory basis for representation by a civilian lawyer, Article 38(b)(2), UCMJ, 10 U.S.C. § 838(b)(2) (1988). Neither the rule nor the statute delegates to the secretaries any authority to further regulate the qualifications of civilian counsel. *Cf.* Articles 38(b)(7) (delegation of authority to secretaries to define "reasonably available"), 140 (authorization to President to delegate authority under UCMJ), UCMJ, 10 U.S.C. §§ 838(b)(7), 940 (1988). Thus, the secretarial requirement that a civilian lawyer inform the military judge whether the lawyer is in good standing is of dubious authority, though obviously sensible, and there is no instruction anywhere on what the military judge may do if the lawyer answers, No! According to the rule, it is only if the lawyer is not admitted to either a federal court or the highest court of a state that the military judge has any occasion to inquire into education and training.

The lawyer in this case was qualified according to R.C.M. 502(d)(3)(A). If he needed additional time to prepare, appellant could have moved for a continuance on that ground. Instead, appellant moved for the continuance to convenience the lawyer by abating the lawyer's concern for his private affairs, namely the possibility that the lawyer's state bar would regard consultation and representation appurtenant to the court-martial as inconsistent with the terms of the state suspension. That was no concern of the court-martial, and the military judge was not obliged to consider it. The motion for a continuance could have been denied as having been based on inadequate cause, but it was granted in part, and even that much was a generosity. The partial denial was not an abuse of discretion.

I would decide the assignment relating to the "excited utterance" solely on the grounds that the ruling was within the military judge's discretion. Just as Senior Judge Snyder noted in his discussion of the continuance, an abuse of discretion is more than a difference of opinion. I am unwilling to hold that the military judge's ruling in this case was an abuse, and therefore I would not reach the alternative grounds for admissibility.