UNITED STATES, Appellee,

v.

**Specialist Four Reuben A. ANSLEY 382–84–7099, United States Army, Appellant.**

CM 449149.

U.S. Army Court of Military Review.

31 Aug. 1987.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Jerry W. Peace, JAGC, Captain John J. Ryan, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC, Captain George R. Gillette, JAGC (on brief).

Before DeFORD, KENNETT and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

On 14 and 15 May 1986, appellant was tried by a general court-martial composed of officer members at Fort Riley, Kansas. He entered pleas of not guilty to the charge and specification alleging he had committed indecent liberties with a child in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. He was convicted of the lesser included offense of indecent acts, also a violation of Article 134, UCMJ. His

sentence to a bad-conduct discharge, confinement for five months, and reduction to the lowest enlisted grade was approved by the convening authority.

Appellant asserts three errors on appeal, two of which are closely related. First, he alleges the admission into evidence of a hearsay statement made by his three-year-old stepdaughter Andrea, the alleged victim of the indecent acts, to Mrs. Kimberly Ansley, the child's mother and appellant's wife, constituted prejudicial error because the statement did not satisfy the excited utterance hearsay exception. Second, because Andrea did not testify, the hearsay statements were introduced in violation of his sixth amendment right to confrontation. Finally, he asserts certain sentencing testimony was inappropriate. We agree the hearsay exception was not satisfied and reverse his conviction.

Mrs. Ansley was called as the first government witness. She testified that on the morning of 5 January 1986, she was not feeling well so she opted to remain in bed. At approximately 1430, she heard voices and the sound of her daughter Andrea playing in the downstairs portion of the Ansley apartment. At approximately 1500 hours Mrs. Ansley arose, went to the top of the stairwell, and called for Andrea. Appellant responded Andrea was with him downstairs. Mrs. Ansley called for Andrea to come upstairs. As Andrea proceeded up the stairs she looked at her mother and said "Daddy made me pee on myself." She did not appear upset, spoke calmly, and walked in a normal manner. She did, however, according to Mrs. Ansley, "have a funny look on her face."

Because of the strange response, Mrs. Ansley asked Andrea to repeat herself. She then took Andrea to the bathroom to check if the girl had "wet" her pants. Mrs. Ansley then questioned Andrea as to what she meant. Andrea responded, "Daddy took his tail out." Thereafter, Andrea volunteered, or in response to short questions from her mother, answered how "Daddy took his tail out" while she was sitting "[o]n his [appellant's] lap." She said "he put it here and here" pointing with her hands to her vagina and "bottom." She told Mrs. Ansley appellant pulled her panties down and asked her to rub "it," which she did. Andrea then said appellant had asked her to lick "it." When asked whether she had done so, Andrea said "No, that's nasty." She said he kept rubbing it on her, that it hurt, and that she didn't like it. Mrs. Ansley asked Andrea whether she had told appellant that it hurt, she said "yes".

Mr. Overfield, a civilian police officer who at the time of the incident was serving as a reserve warrant officer and assigned as a special agent for the Criminal Investigation Command at Fort Riley, questioned appellant concerning the incident. He described statements made to him by appellant. Appellant had described how he believed Andrea to be a sexually curious child. On the morning of the incident, he said she had tried to "look" at his private parts in bed. At or a little after 1300 hours Andrea had come to appellant and gave him a hug while appellant was watching television dressed only in a robe. Appellant described how he sat Andrea on his lap and asked if she "wanted to touch Daddy again?" When she said yes, he said he let her touch his penis. At that juncture appellant thought he would show her where "it went". He took down her underpants, "showed her where the penis belonged," pulled up her pants, and began talking about the incident. Appellant stated he told Andrea not to touch his penis again as that was bad. Appellant denied asking Andrea to lick or scratch his penis and further denied rubbing his penis against her. He did state, however, that it was possible his penis may have touched her. Appellant claimed his actions were designed to satisfy the child's curiosity and to teach her the facts of life. A short time later, Andrea was called upstairs by her mother. Mrs. Ansley then called her husband upstairs.[1]

---

1. Appellant's statements to Mr. Overfield indicate the time lapse from any touching until the time Andrea went to her mother was a short time. Mr. Overfield believed the incident occurred fifteen to twenty minutes prior to Andrea being called upstairs. However, his statement is conjecture. The facts will support the conclusion that the incident occurred sometime

The final government witness was Doctor Behrens. Doctor Behrens was an attending emergency room physician at the Fort Riley hospital on 5 January 1986. He stated that on that date he examined Andrea Douglass and found that Andrea had a reddened perineal area.[2] On cross-examination Doctor Behrens agreed that the condition could have been "caused by 47,000 different things."[3]

In *United States v. LeMere*, 22 M.J. 61 (C.M.A.1986), the Court of Military Appeals addressed the issue of admissibility of hearsay testimony under the excited utterance exception to the hearsay rule contained in Mil.R.Evid. 803(2).[4] Our reading of *LeMere* convinces us the court interpreted Mil.R.Evid. 803(2) to require essentially a subjective analysis of the declarant's degree of excitement vis-a-vis the perceived startling event. *LeMere*, 22 M.J. at 68; *see also* 6 Wigmore, *Evidence* § 1746 (Chadbourn Rev.1976); 4 J. Weinstein and M. Berger, *Weinstein's Evidence* para. 803(2)[01] (1985) [hereinafter *Weinstein*]. If the event did not seem to startle or excite the declarant, then insufficient basis for the hearsay exception exists. Without such "excitement," there remains the question whether the declarant was "bereft of the reflective capacity" to fabricate—the basis for the exception to the general hearsay exclusion. *Weinstein* § 803(2)[01] at 803–86.

■ In circumstances such as here, the perception of whether a startling event has occurred must first be viewed through the eyes of the alleged declarant. It does not matter whether the event is in fact startling but only that it is perceived to be such by the declarant. *United States v. Lemere*, 22 M.J. at 68. Secondly, it must be determined whether the alleged statement was made under the stress of the exciting or startling event or condition. Where the first examination must, by necessity, be subjective in character, the latter determination must be manifested by a clear showing that the statement sought to be introduced was made while under the stress of the perceived startling event or condition. This latter test must, also by necessity, be somewhat objective in character.

■ Here, Andrea displayed no real evidence of excitation or that she had perceived a startling event.[5] Her mother described her statements as having been made in a calm voice, to include her initial statement to her mother as she ascended the stairs. Her walking was described as entirely normal. She repeated her story to her mother and others in a normal manner.

■ Further, after confronting her husband with allegations of improper acts, Mrs. Ansley and Andrea sat down and ate dinner before Andrea was taken to the hospital. Andrea expressed no difficulty in eating or any other discomfort and otherwise appeared normal. These facts also weigh against any determination of a startling event or a statement made under the stress of such event. Finally, her mother testified Andrea, as do all three-year-olds, had lied in the past.[6] This, in light of the

---

between 1300 and 1500 hours on the day in question.

2. He explained the perineal area was the area between the vagina and the rectum.

3. In an *in limine* motion defense counsel, based on *United States v. Deland,* 22 M.J. 70 (C.M.A. 1986), successfully limited the doctor's in-court testimony.

4. Military Rule of Evidence 803(2) excludes from the general hearsay exclusion:
   A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

5. Andrea's spontaneous statement to her mother that "Daddy made me pee on myself" and the

fact that Mrs. Ansley perceived that her daughter had a "funny" look on her face are the only facts which would have a tendency to support an excited utterance. However, the family's attempts to toilet train the little girl could equally explain the child's actions (Record 387–388).

6. The entire family was aware of Andrea's sexual curiosity and her attempts to view the bodies of the other members of the family. Mrs. Ansley and her husband had argued over the proper manner to handle this problem. On one occasion Andrea had told her mother that a babysitter, her older brother, and her stepfather who was then on a field training exercise, as well as her grandmother who lived in Kansas, had touched her private parts. Further, Andrea's mother had observed the child and her nine-

lack of perception of excitement or startling event, indicates it was possible that Andrea may have fabricated a portion of her story. Under these circumstances, we do not believe the child's statement met the foundation requirements for admissibility under Mil.R.Evid. 803(2), and its subsequent admission into evidence constituted prejudicial error.

In view of our holding, we need not address appellant's other allegations of error.[7]

The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge KENNETT and Judge ROBBLEE, concur.

year-old brother touching each other's intimate areas.

7. The record of trial also indicates that Colonels Helton and Semrau may have attended the

court-martial notwithstanding the fact that they were both removed from Court-Martial Order No. 26, dated 30 April 1986, by Court-Martial Convening Order No. 29, dated 14 May 1986.