UNITED STATES, Appellee,

v.

Curtis A. JONES, Private, U.S.
Army, Appellant.

No. 56,953.

CM 448455.

U.S. Court of Military Appeals.

June 20, 1988.

For Appellant: *Captain Robert P. Morgan* (argued); *Lieutenant Colonel Charles A. Zimmerman, Lieutenant Colonel Joel D. Miller, Captain Stewart C. Hudson* (on brief); *Colonel Brooks B. La Grua.*

For Appellee: *Captain Gary L. Hausken* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Patrick A. Hewitt* (on brief); *Captain Samuel J. Rob.*

---

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to his pleas, appellant was convicted by general court-martial of one specification each of indecent assault and false swearing, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The members sentenced appellant to a dishonorable discharge, confinement for 8 years, and total forfeitures. The

convening authority approved the trial results, and the Court of Military Review (one judge dissenting as to sentence) affirmed the findings and sentence in a short-form opinion.

We granted appellant's petition for review to consider the following issue:[1]

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING MRS. FARMER TO TESTIFY OVER DEFENSE OBJECTION AND THEN EXCLUDING A VIDEOTAPE OF THE INTERVIEW WHICH WAS THE SUBJECT OF MRS. FARMER'S TESTIMONY.

Appellant challenges the decision of the military judge to exclude a videotape of an interview of the victim by a social worker concerning the charged assault, after that social worker had testified as to the contents of that interview. We hold that the military judge did err by excluding the videotape but that, in light of the strength of the Government's case, the error was harmless.

I

This case arose when the victim complained to her mother that appellant had fondled her while the two were in a "fun house" at a carnival. She was flushed, confused, and showed marks on her neck which were described as "hickeys." Her parents reported the matter immediately, and appellant was apprehended almost on the spot. In an interview with an agent of the Criminal Investigation Division, he denied that he had made any untoward advances.

The victim was a severely retarded, 17–year-old girl.[2] Her responses on the stand were such that trial counsel was permitted to lead her through her testimony. *See* J.

Myers, *Child Witness Law and Practice* § 4.6 (1987) (hereafter Myers). She identified appellant as her assailant and was generally able to describe the incident through the use of "anatomically correct" dolls. *See id.* at §§ 4.8 and 4.43. However, on cross-examination the girl admitted that on at least one occasion, she had told a social worker, Mrs. Farmer, that a man other than appellant had "touched" her. *See id.* at § 4.45.

There were several other references to this other man during the testimony of various witnesses. However, neither the Government nor appellant called Mrs. Farmer to testify. This obviously troubled the members. Indeed, after both sides had rested, the president of the court noted the conversation and asked if the statement the victim had made to Mrs. Farmer would be offered as evidence. Following some discussion, the military judge advised counsel that, if neither of them elected to call Mrs. Farmer, he would advise the members of their right to call witnesses. Defense counsel objected to any testimony from Mrs. Farmer as being hearsay and cumulative of the victim's testimony, but the military judge overruled the objection.

Ultimately, the military judge allowed the Government to reopen its case and call Mrs. Farmer. She confirmed that the girl had indeed discussed the incident with her. During this discussion, Mrs. Farmer had asked her if anyone else had touched her there, and she had replied in the affirmative. Mrs. Farmer told the court that this had caused her to question the girl further about the incident because retarded children often say "yes" to questions when they intend to respond in the negative. Mrs. Farmer testified that, after asking the girl these additional questions, she had con-

---

1. We also granted the petition as to the following error:

WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED AS A MATTER OF LAW TO SUSTAIN A FINDING OF GUILTY TO THE ADDITIONAL CHARGE AND ITS SPECIFICATION (FALSE SWEARING).

This issue has been resolved by our decision in *United States v. Gay*, 24 M.J. 304 (C.M.A.1987).

2. Although counsel objected to the military judge's ruling that the child was competent to testify, appellant has not pursued this contention on appeal. *See* J. Myers, *Child Witness Law and Practice* § 2.5 (1987).

cluded that the girl had done just that and was really talking about appellant.

Defense counsel did not object to Mrs. Farmer's qualifications to express this opinion. However, in his cross-examination he sought to limit or impeach her conclusion. In particular, he questioned her about her prior experience in dealing with mentally retarded persons and about her limited background in psychology. He also established the fact that the interview had been videotaped at the request of trial counsel.

After Mrs. Farmer had testified, defense counsel moved to admit the videotape to further undercut the impact of her opinion that there was no person other than appellant involved. *See* Myers, *supra* at § 2.2. On objection by the Government, the military judge denied the motion, ruling that the tape was hearsay.

Defense counsel's theory of the case was that, due to the victim's limited mental capacity, she had misidentified appellant as her attacker. To this end, he successfully demonstrated her lack of memory during his cross-examination. On *voir dire* as to competence and again in her testimony on the merits, he showed the members that she had difficulty remembering such simple matters as her address and the names of the adults with whom she had discussed the incident. Defense counsel also questioned whether the girl was susceptible to suggestion, and he elicited information that she had discussed the case on at least three occasions with the prosecution. *See id.* at § 2.2, concerning pitfalls of multiple interrogations, and § 4.37 concerning suggestibility of a child witness. The cross-examination of Mrs. Farmer also disclosed a number of conversations between the social worker and the Government concerning the case.

In his summation defense counsel referred to the victim's general inability to remember and relate facts and pointed out that she was open to suggestion as to answers to questions posed by adults. While not attributing any mendacity to the Government, he argued that appellant erroneously had been suggested to the girl as her assailant and that someone else, the "other man," was in fact the perpetrator.

II

There are two questions posed by this case. The first is whether the military judge correctly permitted Mrs. Farmer to testify as to the substance of her interview of the victim. Second, whether he should have then allowed defense counsel to present the videotape of the conversation. We answer both questions in the affirmative. However, we conclude that appellant suffered no harm from the military judge's refusal to permit his counsel to play the tape for the members.

■ We repeatedly have affirmed the right of a court-martial to call its own witnesses in a search for the truth. *Cf. United States v. Carr,* 18 M.J. 297 (C.M.A. 1984). This right, of course, is limited by the military judge's determination that the testimony of such a witness is admissible. *Id.* at 300, *quoting United States v. Parker,* 7 U.S.C.M.A. 182, 21 C.M.R. 308 (1956). In this case Mrs. Farmer was called, not to reinforce the fact that the victim had misidentified appellant or to bolster the credibility of the victim as appellant would contend, but to clarify an ambiguity in the evidence. Her testimony offered for this purpose was clearly relevant, since it would assist the trier of fact in determining a fact in issue, *i.e.,* the identity of the assailant. Mil.R.Evid. 401 and 402, Manual for Courts-Martial, United States, 1984.

However, the existence of relevance does not end the inquiry. The evidence must also meet other criteria of admissibility, and the witness must be competent to testify on the subject. In this case, although the Government did not articulate the basis on which it sought to introduce the evidence, we perceive at least two grounds justifying admission of the apparent hearsay testimony.

■ Defense counsel went to great lengths to impeach the victim. He demon-

strated her lack of memory and attempted to show that appellant's identity had been suggested to her by someone. This is tantamount to a charge of recent fabrication. Under the Federal Rules of Evidence and state evidence codes based thereon (as are the Military Rules of Evidence), the proponent of the witness impeached thereby may then rehabilitate the witness by introducing a prior consistent statement given before the event which is alleged to have resulted in the fabrication. Such a statement is admissible for the truth therein. *United States v. Blankinship*, 784 F.2d 317 (8th Cir.1986); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983) (in incest case, prior consistent statement admitted as substantive evidence, as well as rebuttal of charge of fabrication); *State v. Roy*, 140 Vt. 219, 436 A.2d 1090 (1981); *Thomas v. State*, 92 Wis.2d 372, 284 N.W. 2d 917 (1979); *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977) (on facts similar to the instant case, a prior consistent statement was admissible under New Mexico's equivalent of Mil.R.Evid. 801(d)(1)(B)). *See* 4 *Weinstein's Evidence* § 801(d)(1)(B)[01] (1987). Accordingly, the military judge properly allowed Mrs. Farmer to testify as to the contents of the interview for this purpose.[3]

■ Additionally, Mrs. Farmer could have testified as an expert as to the reasons for her conclusions that the girl's response was a product of her limited mental abilities. Although defense counsel did attempt to limit the impact of this testimony by pointing out that she was not a trained mental-health professional, he did not challenge her competence to render this opinion.[4] As such, any objection to her qualifi-

cations to offer an opinion under Mil.R. Evid. 702 was waived. *See* Mil.R.Evid. 103.

Mrs. Farmer's testimony was a professional explanation of the reaction of a mentally retarded person to an interview. The behavior patterns and responses of a severely retarded person are probably not familiar to the average court member. Accordingly, the testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue" and, thus, was the proper subject of an opinion by an expert under Mil.R.Evid. 702. *United States v. Petersen*, 24 M.J. 283 (C.M.A. 1987); *United States v. Azure*, 801 F.2d 336 (8th Cir.1986); *cf. United States v. Snipes*, 18 M.J. 172, 180 (C.M.A.1984) (Everett, C.J., concurring in the result). Since either side may elicit the underlying basis for such an opinion without regard to which side called the witness, the testimony was admissible under Mil.R.Evid. 705.

■ We conclude, however, that the military judge erred by excluding the videotape of the interview. The central issue in this case was the identity of the person who had perpetrated the assault. As appellate defense counsel have cogently argued, the basis of Mrs. Farmer's testimony could have been better evaluated by the members by allowing them to view the tape of the victim's conversation with her. This would have allowed the members to consider the degree to which the identification of appellant had been suggested to the victim. Further, the Military Rules of Evidence have greatly broadened the scope of the "best evidence" rule to include such items. Mil.R.Evid. 1002. Therefore, the military judge erred in denying defense counsel the

---

**3.** In its answer the Government argued that this was not hearsay but a statement of identity under Mil.R.Evid. 801(d)(1)(C). However, it is clear from the legislative history of the Federal Rules of Evidence that such is not the case. Congress intended that Fed.R.Evid. 801(d)(1)(C) remedy the situation where the witness identified the accused either in a line-up or from photographs and (1) his "memory no longer permits a current identification and" therefore someone else must "testify as to his previous identification," or (2) having identified the accused before trial, he then "refuses to acknowl-

edge his previous identification" out of fear. 121 Cong.Rec. 31866–67; *see United States v. Elemy*, 656 F.2d 507, 508 (9th Cir.1981).

**4.** A number of states have allowed social workers to testify about observable behavior patterns of children in sex-abuse cases in order to provide background information to allow jurors to evaluate the testimony of the victim. *Rodriquez v. Alaska*, 741 P.2d 1200 (Alaska App.1987); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983).

opportunity to test the witness' testimony by playing the tape for the members.

## III

This leaves us with the question of prejudice. We previously have held that exclusion of material evidence is not, *per se*, reversible error. *United States v. Weeks*, 20 M.J. 22 (C.M.A.1985); *see also United States v. Vandelinder*, 20 M.J. 41 (C.M.A.1985). Rather, the rule is that each case must be evaluated by comparing the whole record to the evidence excluded. In *Weeks* we adopted a test for specific prejudice when considering evidentiary questions. This test weighs the relative strengths of the Government's case against that of the accused, the materiality of the evidence, and the quality of the excluded evidence.

Herein, the Government's case was relatively strong. Appellant had offered to take the victim and her brother on some carnival rides while her parents worked at a charity booth. When her parents noticed that their daughter had been gone for some time, they began to look for her. The younger brother returned and informed them that he had been sent on some rides alone and had been told to meet his sister and appellant at a certain time and place. When they did not arrive, he returned and reported this to his parents.

After some searching, the girl and appellant were found as they left a fun house. She appeared to be upset and pale with large red marks on her neck. When questioned as to what had occurred, the girl related that appellant had bitten her neck and fondled her vaginal area. The witnesses testified that they had not seen any marks on the victim's neck earlier in the evening. Photographs taken shortly after the event show the marks and tend to corroborate this testimonial evidence.

Concededly, the victim's testimony was sketchy at best. However, after some prodding, she was able to relate that appellant had taken her into the fun house where it was dark, had kissed her on the neck, and had placed his hand inside her panties and on her vagina.

Appellant's defense, while not totally implausible, was relatively weak. It consisted of two witnesses—a school bus driver and a counselor who had not seen the victim for about 2 years. The bus driver testified that, on a prior occasion when the girl had been "bothered," she had immediately cried out when touched. The school counselor testified that, during the time she had known her, the girl had liked boys and also had tended to exaggerate. Finally, in his summation defense counsel tried to suggest to the members that a person attached to the carnival had been the "other man" mentioned to Mrs. Farmer.

The tape clearly was material: It went to the heart of appellant's defense that he was not the assailant. Nonetheless, while we do not have the tape to directly evaluate its impact, we cannot believe that it could have been of such a quality as to overcome the Government's strong case-in-chief. Moreover, counsel made little use of Mrs. Farmer's testimony in her summation but stuck very closely to the evidence adduced from her other witnesses.[5] Thus, it is clear that the Government did not rely on the testimony of Mrs. Farmer to obtain appellant's conviction. Consequently, we conclude that the error was not prejudicial to appellant's substantial rights.[6] *See* Art. 59(a), UCMJ, 10 U.S.C. 859(a); *United States v. Weeks, supra.*

## IV

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

5. Trial counsel did not even refer to Mrs. Farmer's testimony in her opening argument on findings. She did refer to it in her rebuttal, however, presumably because of defense counsel's repeated references to the question of the "other man"—but even then only to clarify a point concerning what Mrs. Farmer actually said.

6. We observe that the court members returned their findings of guilty after only 16 minutes of deliberation.