## UNITED STATES

v.

**Brian T. REGGIO, 545–11–9621 Aviation Electronics Technician Second Class (E–5), U.S. Navy.**

**NMCM 92 2818.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 27 June 1992.

Decided 29 July 1994.

Capt H.W. Frank, USMC, Appellate Defense Counsel.

LT Scott A. Browne, JAGC, USNR, Appellate Government Counsel.

Before MOLLISON, Senior Judge, and DeCICCO and GUERRERO, JJ.

MOLLISON, Senior Judge:

The principal issue in this appeal from a general court-martial conviction is whether the military judge erred in admitting an alleged child abuse victim's out-of-court demonstration of how he suffered injury. We conclude the military judge did not err and we affirm.

Contrary to his pleas, the appellant was found guilty *inter alia* of battery of a child in July and September 1991, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (1988).[1] A general court-martial composed of officer members sentenced the appellant to confinement for 2 years, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the reduction but suspended confinement in excess of 6 months and

mitigated the dishonorable discharge to a bad-conduct discharge.

The appellant's court-martial is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (1988). This court may only affirm such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c). It may not set aside a finding of guilty or the sentence on the basis of an error of law unless the error is materially prejudicial to the substantial rights of the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988).

The appellant has assigned two errors.[2] We find no merit in either. We discuss only the first assignment of error, which pertains to testimony admitted on Specification 3 of the Charge, alleging battery of a child in July 1991. No assignment of error has been raised respecting Specification 2 of the Charge, alleging battery of the same child in September 1991.

I.

Airman K resided with her two children in family housing aboard Naval Air Station, Lemoore, CA. The appellant, who was married to someone else, resided intermittently with Airman K and her children from April to September of 1991. At the end of July 1991, Airman K's oldest son, Joshua, age 19 months, suffered severe bruises to the right side of his face and head. In the course of events the appellant gave various accounts of how the injuries were sustained.[3] All of his

---

1. Contrary to his pleas, the appellant was also found guilty of assaulting the child's mother by having sexual intercourse with her without informing her that he had genital herpes.

2.
   I.
   THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING AS AN EXCITED UTTERANCE, OVER DEFENSE HEARSAY OBJECTION, THE TESTIMONY OF SUSAN CHARLES THAT JOSHUA [ ] MADE A PUNCHING GESTURE IN RESPONSE TO HER ASKING WHAT HAD HAPPENED. .
   II.
   THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY BEYOND A REASON-

ABLE DOUBT OF ASSAULT BY HAVING SEXUAL INTERCOURSE WITHOUT WARNING HIS PARTNER THAT HE HAD HERPES WHERE IT PRESENTED NO EVIDENCE THAT HE WAS EVER DIAGNOSED WITH HERPES AND WHERE THE SEXUAL HISTORY OF THE PUTATIVE VICTIM WAS SUCH THAT APPELLANT WAS HARDLY THE ONLY POTENTIAL SOURCE OF THE DISEASE.

3. Initially, the appellant claimed that Joshua had been pushed off a playground slide by other children. Record at 334, 601. During a brief hiatus in his relationship with Airman K, appellant met with a social worker at the Family

explanations, however, had in common that the injuries occurred while Joshua was in his presence. Ultimately, the members concluded the injuries were caused by the appellant's battering Joshua with his hand or a similar object.

Testimony at trial showed that in July 1991 Airman K utilized the services of Mrs. Susan Charles to baby-sit her children at Mrs. Charles' base quarters during the workday. Mrs. Charles testified that when Joshua was brought to her quarters on Monday, 29 July 1991, "the right side of Joshua's head was swollen from his forehead to the middle of his jawbone and his ear was pushed out." Record at 489, 510. Joshua, normally an active child, just sat around all day, "like he was in a daze." Record at 489. The appellant, whom Mrs. Charles knew to be Airman K's boyfriend, came for Joshua at 1100 "in order to spend some quality time with Josh." Record at 490. After the appellant picked Joshua up in his arms, Joshua put his arms around Mrs. Charles' neck and pulled himself out of the appellant's arms. *Id.* The appellant retrieved Joshua and departed with him.

The next day, Tuesday, 30 July 1991, Mrs. Charles observed that "the whole side of [Joshua's] face was swollen, clean down to his jawbone." Record at 490, 510. At 1100 that day, the appellant again came to Mrs. Charles' quarters to get Joshua. When Joshua saw the appellant, Joshua "started whimpering," "looked terrified," and clung to the leg of another adult who was present at the time. Record at 490–91. The appellant "seemed to get agitated, and he went and he picked up Josh ... and grabbed him by the arms and pulled him away and went out the door."[4] Record at 491.

Following a doctor's appointment for Joshua on Wednesday, 31 July 1991, Airman K again brought Joshua to Mrs. Charles' quar-

ters. Mrs. Charles observed that when Joshua came into her house:

> [H]e climbed up on my couch, and he just kind of sat there, like in a daze. He just didn't pay attention to anything or anyone around him.... He was a very playful kid. He would go with me, follow me around the house, and jabber and—but he didn't that morning. He just sat on the couch like he was in a daze, like he wasn't even there.

Record at 505–06. Mrs. Charles also observed:

> [The] whole right side of [Joshua's] face was bruised, from the middle of the forehead, all the way down, along the side, clean back to the jawbone area. The ear was pinched down. This was all black and blue, and he had like half-moon shapes here on his forehead, like a knuckle going across the eye, and then half-moon shape here (indicating) and here (indicating) to the ear and ... a red mark on his ear.... [His eye] was swollen shut, and it was so black and blue and purple that it looked black, and it was huge. The whole side of his face was huge. He looked like ET on one side and normal on the other.

Record at 491. Troubled by Joshua's condition, Mrs. Charles summoned a friend who was a licensed day-care provider. The friend came to her quarters, and "we asked [Joshua] what had happened...." Joshua then took his right hand, balled it up into a fist, placed it against his right cheek, "and started rambling on and that was the first reaction from him."[5] Record at 506. Mrs. Charles also observed, "Josh was not Josh that whole day, but he did start coming out of his shell later on." *Id.*

Defense counsel objected to the introduction of Mrs. Charles' testimony describing Joshua's demonstration on grounds it was inadmissible under the rule against hearsay,

---

Service Center. He told the social worker that Joshua was rejecting him because he had dropped Joshua on a table at home, causing the side of his head to swell. Record at 513. Following the resumption of his relationship with Airman K, appellant told Airman K that he had dropped Joshua from the playground slide. Record at 338. Appellant maintained the ultimate version of events at trial.

**4.** In fact, the appellant picked Joshua up with neither the knowledge nor permission of Airman K.

**5.** Elsewhere, Mrs. Charles testified, "[W]e asked him what happened and he just went like this (indicating) and started jabbering off like he just went off into space." Record at 498.

Military Rule of Evidence 802 [hereinafter Mil.R.Evid.]. In reply, trial counsel offered the demonstration under three exceptions to the rule against hearsay: (1) the excited utterance exception, Mil.R.Evid. 803(2); (2) the then existing mental, emotional, or physical condition exception, Mil.R.Evid. 803(3); and, (3) the residual hearsay exception, Mil. R.Evid. 803(24).

Following a hearing outside the presence of the members,[6] the trial judge admitted the testimony of Joshua's demonstration under the excited utterance exception. The trial judge entered six essential findings in support of his ruling:

1. On 31 July 1991, Joshua showed up at Mrs. Charles' home with the bruising and discoloration she has described and drawn.

2. Joshua did not have these injuries the day before that.

3. Joshua was under age two at the time. He did not speak but was able to understand some basic phrases.

4. A child under the age of two would be under the excited—the excitement of a starting [sic] event longer than an adult. Mrs. Charles' question was put to Joshua about one day after his facial injury was incurred.

5. Children of Joshua's age have very limited, if any, capability of calculating answers that mislead others.

6. Joshua's statement was made while he was being affected by the stress of the event that caused his facial injuries.

Record at 502, 504.

The military judge entered no essential findings respecting the admissibility of Joshua's demonstration under Mil.R.Evid. 803(3), the then existing condition exception to the rule against hearsay. He also declined to consider the admission of the testimony under Mil.R.Evid. 803(24), the residual hearsay exception. Record at 497.

**6.** UCMJ art. 39(a), 10 U.S.C. § 839(a) (1988).

## II.

Congress has delegated to the President authority to prescribe rules of evidence in trials by court-martial. UCMJ art. 36(a), 10 U.S.C. § 836(a) (1988). The President has exercised that authority by promulgating the Military Rules of Evidence, which are set forth in the Manual for Courts–Martial (MCM), United States, 1984. Exec. Order No. 12473, 49 Fed.Reg. 17152 (1984), as amended.

Mil.R.Evid. 802 provides that "[h]earsay is not admissible except as provided by [the Military Rules of Evidence] or by any Act of Congress applicable in trials by court-martial." " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Mil. R.Evid. 801(c). A " 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Mil.R.Evid. 801(a). An "excited utterance," though hearsay, is not excluded by the rule against hearsay. Mil. R.Evid. 803(2). An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

■ The appellant asserts that the military judge erred in receiving testimony of Joshua's out-of-court demonstration under the excited utterance exception to the rule against hearsay because the nonverbal statement was remote from the supposed startling event and was not accompanied by indicia of excitement. More particularly, the appellant contends that too much time passed between the supposed event and the child's statement; that no evidence supports the trial judge's findings that a child remains agitated longer than an adult does; that the gesture made by Joshua was not spontaneous, but rather was in response to questioning; that Mrs. Charles was not the first trusted person to whom Joshua could have reported the source of his injury, Joshua's mother and his a doctor being available for this purpose; and, that Joshua was not in an excited state when he made the gesture in issue.[7] Contrarily,

**7.** The appellant does not claim that the admission of hearsay under the excited utterance ex-

the Government asserts the military judge did not abuse his discretion in admitting this testimony under the excited utterance exception.

### III.

■ A military judge's decision to admit hearsay under the excited utterance exception to the rule against hearsay will not be overturned on appeal in the absence of a clear abuse of discretion. *United States v. LeMere,* 22 M.J. 61 (C.M.A.1986); *see also United States v. Spychala,* 40 M.J. 647 (N.M.C.M.R.1994); *United States v. Pearson,* 33 M.J. 913 (A.F.C.M.R.1991). "The exercise of discretion implies conscientious judgment, not arbitrary action. It takes account of the law and the particular circumstances of the case and is directed by reason and conscience to a just result." *United States v. Fisher,* 37 M.J. 812, 816 (N.M.C.M.R.1993) (citing *Burns v. United States,* 287 U.S. 216, 223, 53 S.Ct. 154, 156–57, 77 L.Ed. 266 (1932)). "[A]n abuse of discretion involves far more than a difference in opinion. The challenged action must be found to be arbitrary, fanciful, clearly unreasonable, or clearly erroneous in order to be invalidated on appeal." *United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987) (citation, quotations and ellipses omitted).

■ In determining whether a military judge abused his discretion in admitting hearsay under the excited utterance exception, the following general principles apply:

(1) The basis for the excited utterance exception is a person is less likely to fabricate a statement when laboring under the stress and excitement of a recent startling event or condition;

(2) There is no bright-line rule on excited utterances, however, it is universally recognized that in order for there to be an excited utterance, the statement must be spontaneous, excited or impulsive, rather than the product of reflection and deliberation;

(3) While hysteria is not required, there must be indicia of stress or excitement linked to the startling event or condition;

(4) The statement need not be made contemporaneously with the startling event or condition to be admissible as an excited utterance, however, it must be contemporaneous with the excitement or stress caused by the event or condition;

(5) As time passes, a person is less likely to be laboring under the stress or excitement of the event or condition in question; however, the lapse of time between the event and the out-of-court statement is not dispositive, but is a factor to be weighed;

(6) As time between the startling event or condition and the statement increases, the more other factors bear on the issue of reliable spontaneity; e.g, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, the subject matter of the statement, the demeanor of the declarant, and the opportunity to report;

(7) As the age of the declarant decreases, the more elastic the elapsed time factor becomes; and

(8) The simple question, "What happened?", does not destroy the requirement for spontaneity, however, it is a factor to be considered.

*United States v. Arnold,* 25 M.J. 129 (C.M.A. 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *United States v. Grant,* 38 M.J. 684, 691–92 (A.F.C.M.R.1993) (citations and quotations omitted); *see also United States v. Chandler,* 39 M.J. 119 (C.M.A.1994); *Pearson; United States v. Jones,* 30 M.J. 127 (C.M.A.1990); *Spychala; United States v. Lingle,* 27 M.J. 704 (A.F.C.M.R.1988), *petition denied,* 28 M.J. 455 (C.M.A.1989), *petition for reconsideration denied,* 29 M.J. 300 (C.M.A.1989); *United States v. Iron Shell,* 633 F.2d 77 (8th

ception to the hearsay rule violates the Confrontation Clause of the Sixth Amendment. Clearly, the excited utterance exception to the hearsay rule is a "firmly rooted" exception, and admission of excited utterances under this exception

does not violate the Confrontation Clause. *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *United States v. Arnold,* 25 M.J. 129 (C.M.A.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

▮ Applying the foregoing to the facts of this case, we note that Joshua's out-of-court demonstration was nonverbal conduct, intended as an assertion of fact. Therefore, it was hearsay. However, Joshua had been subjected to a significant startling event and condition, namely, substantial physical trauma to his face and head. There may have been a single event, or there made have been multiple events. The event(s) occurred within a matter of hours to three days prior to the statement. In any case, a patently stressful condition, namely the severe bruising of Joshua's head, persisted at the time the statement was made. Joshua's statement related to the startling event and condition. The statement was made by a child of 19 months. The statement was made in response to a question; however, the response was immediately forthcoming and followed by "rambling" or "jabbering," suggesting the response was the product of impulse, vice reflection and fabrication. The demeanor and emotional condition of the child before and after the statement were further indicia of substantial stress relative to the event and condition. In sum, in admitting this demonstration under the excited utterance exception, the military judge exercised conscientious judgment, taking into account the law and the particular circumstances of the case. His actions were not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. Accordingly, we conclude he did not abuse his discretion.

This Court recently noted in *Spychala* that "[a]lthough the passage of time alone does not require a certain outcome on this issue, ... a passage of time greater than 30 days is well beyond the outer limits of statements previously found admissible as excited utterances." *Spychala,* at 650. Accordingly, it held that a statement made more than 30 days after the event did not qualify for ad-

mission as an "excited utterance" because it was not made contemporaneously with the excitement or stress caused by the event or condition. In *Spychala,* however, there was apparently no objective, independent evidence to suggest that any startling event had ever occurred. Here, the condition of the child's face and head evidenced both the fact that the child must have been subjected to a startling trauma and that at the time of his statement he was still laboring under the physical pain inevitably associated with it. Mrs. Charles also testified that the child's unsophisticated and presumably guileless demeanor was substantially altered at the time. Moreover, the period of time between the infliction of the injury or injuries was anywhere from a matter of hours to 3 days, and thus, considerably shorter than that in *Spychala.* Accordingly, we distinguish *Spychala* on its facts.

## IV.

The trial counsel also offered Mrs. Charles' testimony on Joshua's demonstration under the then existing condition exception to the hearsay rule, Mil.R.Evid. 803(3). No argument was made by counsel on the applicability of this exception and, as noted, the military judge did not rule on this alternative basis for admission. This state of the record, however, does not prevent this Court from entertaining the merit of the Government's alternative offer.[8] *See United States v. Dodson,* 16 M.J. 921, 929 (N.M.C.M.R.1983), *aff'd,* 21 M.J. 237 (C.M.A.1986), *cert. denied,* 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986); *cf. United States v. Alexander,* 34 M.J. 121, 124 (C.M.A.1992).

Mil.R.Evid. 803(3) provides that the following hearsay is not excluded:

*Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling,

---

8. We decline to consider the admissibility of the Joshua's out-of-court demonstration under the residual hearsay exception because the military judge did not enter essential findings thereon, see *United States v. Hines,* 23 M.J. 125 (C.M.A. 1986); *LeMere,* 22 M.J. at 68, and there is no indication the notice provisions applicable to of-

fers under this exception were satisfied. Mil. R.Evid. 803(24); *see also Jones,* 30 M.J. at 131 n. 3 (Cox, J., concurring). Additionally, we note that the then existing condition exception to the hearsay rule is also "firmly rooted," and admission of hearsay under it also does not violate the Confrontation Clause. *Lingle,* 27 M.J. at 708–09.

pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered. . . .

This exception to the rule against hearsay has been applied in cases of child abuse. For example, in *Lingle*, the accused was charged with physically abusing the 4–year–old daughter of his girlfriend. After seeing large bruises on the child, her baby sitters inquired, "What happened?" The child replied that the accused had hit her. These statements were admitted under Mil.R.Evid. 803(3) as statements of the child's emotional and physical pain. *Lingle*, 27 M.J. at 708.

Joshua's physical and emotional pain was evident. His statement related to his then-existing emotions and physical condition, including his mental feeling, pain and bodily health. When asked, "What happened?", he responded with the gesture described above. Joshua did not go so far as to state who inflicted the injury. Otherwise, the present case is virtually indistinguishable from *Lingle*. Accordingly, as in *Lingle*, Joshua's demonstration was admissible under Mil.R.Evid. 803(3).

### V.

Although we have concluded that the military judge did not abuse his discretion in admitting the aforementioned testimony, we have considered what effect erroneous admission of the testimony would have, assuming, *arguendo*, that it was improperly admitted.

■ When hearsay is improperly admitted, the reviewing court must determine whether or not the error was harmless. *United States v. Armstrong*, 36 M.J. 311, 314 (C.M.A.1993); UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988).

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the

judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (footnote and citation omitted).

■ The following four-pronged analysis for prejudice from erroneous hearsay rulings now applies:

> First: Is the Government's case against the accused strong and conclusive?
>
> Second: Is the defense's theory of the case feeble or implausible?
>
> Third: What is the materiality of the proffered testimony?
>
> Fourth: What is the quality of the proffered evidence and is there any substitute for it in the record of trial?

*United States v. Giambra*, 38 M.J. 240, 242 (C.M.A.1993) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985)).

■ First, the Government's case against appellant was strong and conclusive. Joshua was clearly the victim of extraordinary, multiple injuries, including the head trauma described above, as well as burns which were the subject of Specification 2. Mil.R.Evid. 404(b). The injuries occurred when Joshua was in the presence of the appellant and out of the presence of his mother. The bruises were on the right side of Joshua's face and the appellant is left handed. Record at 491. In two of the versions the appellant supplied respecting the mechanism for Joshua's head injuries, appellant admitted that he was the cause. The appellant also admitted in a pretrial statement that he "may have been a little neglectful in caring for Joshua." Prosecution Exhibit 23. Further, a medical expert in diagnosing and treating child abuse testified that he was of the opinion the injuries were the result of non-accidental trauma, meaning child abuse. Record at 562–63. See *United States v. Combs*, 39 M.J. 288

(C.M.A.1994) (expert testimony is not objectionable because it embraces an ultimate issue to be decided by the trier of fact).

Second, the defense's theory of the case is both feeble and implausible. The appellant provided three different versions of how the head injuries were sustained. Initially, Joshua was pushed off playground apparatus by other children. Record 334, 601. Next, the appellant dropped Joshua on a table at home. Record at 513. Lastly, the appellant himself dropped Joshua from the playground apparatus. Record at 338. His uncorroborated version at trial, viz, that he climbed to the top of an eight-foot-high slide and dropped Joshua to the ground, is also implausible in the absence of additional injuries to Joshua and the failure of the appellant to seek medical assistance.

Third, the materiality of the admitted testimony was minimal. Although the trial counsel referred to Joshua's verbal act in her closing argument, it was but one small piece of evidence in the case. Record at 730. The Government relied primarily on the evidence of the injuries to the child, on the circumstances surrounding the infliction of the injuries, on the implausibility of and inconsistencies in the appellant's stories, on the appellant's failure to seek medical attention for Joshua, and on expert testimony.

Fourth, the verbal act itself was vague and ambiguous. Joshua did not identify the appellant as the source of the injury, and Joshua's inability to speak precluded elaboration.

Accordingly, we are convinced that the effect, if any, of the disputed testimony was very slight, and the evidence, absent the disputed testimony, was conclusive. Therefore, even assuming the admission of the testimony was improper, we conclude such error would be harmless.

## VI.

Based on the foregoing, we conclude no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.

GUERRERO, Judge (concurring in part and in the result):

I concur in Judge Mollison's opinion, with the exception of part IV. In my opinion, Joshua's statement does not indicate his then-existing physical condition, but rather was a statement of a past act which had caused his condition. I would, therefore, not rely on Mil.R.Evid. 803(3) as a basis for admitting the statement.

DeCICCO, Judge (concurring in the result):

In my opinion, Joshua's gesture was not admissible as either an excited utterance or a statement of a then existing mental, emotional, or physical condition. The gesture was not made under the stress of excitement of the assault he suffered. In fact, it was made at least a day later, was performed only in reply to a question, and was not an emotional volunteering of information. *United States v. LeMere,* 22 M.J. 61 (C.M.A.1986); *United States v. Spychala,* 40 M.J. 647 (N.M.C.M.R. 1994); *United States v. Ansley,* 24 M.J. 926 (A.C.M.R.1987). In *LeMere,* the Court of Military Appeals rejected the argument that stress is often present for a longer period in children than in adults, and stated that "Mil. R.Evid. 803(2) cannot readily be applied to a situation where a child calmly answers questions by her mother instead of emotionally volunteering information." *LeMere,* 22 M.J. at 68. The result should not be any different when a child answers questions from a day care provider. I do not view Joshua's "dazed" or depressed state as the type of state of excitement contemplated under the rule. *United States v. Grant,* 38 M.J. 684, 692 (A.F.C.M.R.1993); *United States v. Fink,* 32 M.J. 987 (A.C.M.R.1991). Finally, this was not his first real opportunity to report the incident. Just prior to being taken to his day care provider, he was with his mother and doctor at a medical appointment.

Nor does this gesture qualify for admission into evidence as a statement of a then existing mental, emotional, or physical condition. Joshua was not commenting on his physical condition but instead was apparently relating his memory of what *caused* his injuries. It

was not a statement of his present status, but rather a backwards-looking statement that does not qualify for admission into evidence under the exception. *United States v. Elmore*, 33 M.J. 387, 396 (C.M.A.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992); Stephen Saltzburg, Lee Schinasi & David Schlueter, *Military Rules of Evidence Manual* 793–94 (3d ed. 1991).

Nonetheless, I fully concur with part V of the lead opinion that any error in admitting evidence of this gesture was harmless in light of the significant other circumstantial evidence of the appellant's guilt, the implausibility of the defense theory of the case, and the minimal value of this piece of evidence. Accordingly, I concur in affirming the findings and sentence.