## UNITED STATES

v.

**Darrel K. THOMAS, 430 21 1418, Sergeant (E–5), U.S. Marine Corps.**

**NMCM 93 01066.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 11 Dec. 1992.

Decided 16 Dec. 1994.

CDR M.T. Hall, JAGC, USN, Appellate Defense Counsel.

Capt Lester B. Hopkins, USMC, Appellate Government Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and WELCH, J.

D. WELCH, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial before members of maiming a fellow marine in violation of Article 124, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 924. He was sentenced to a bad-conduct discharge, confinement for 1 year, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

In his single assignment of error,[1] the appellant argues that the military judge erred in allowing the wife and nephew of the victim (Sergeant Bowen) and an agent from the Naval Investigative Service [NIS] to testify, over objection, that the victim had identified the appellant as the perpetrator of the assault. This testimony was presented during the Government's case-in-chief, following Sgt Bowen's in-court identification of the appellant as the perpetrator. The appellant asserts that Sgt Bowen's prior out-of-court identification of him as the assailant constituted hearsay and was not admissible under any authorized exception to the hearsay rule. Mil.R.Evid. 802.

## I.

During the evening of 1 July 1992, the appellant and Sergeant Rodney E. Bowen, USMC, joined several other Marines for a drink at the Leatherneck Lounge at Marine Corps Recruit Depot, Parris Island, South Carolina. The appellant and Sgt Bowen were close friends. While in the lounge, Sgt Bowen reported an intoxicated Marine to the Officer of the Day. Immediately following removal of the drunken Marine, the appellant became belligerent with Sgt Bowen. A verbal altercation ensued which resulted in Sgt Bowen slapping the appellant. The two had to be physically restrained by other Marines. Following this incident, the Marines departed the area with the appellant leaving approximately 3 to 5 minutes before Sgt Bowen. After leaving the Leatherneck Lounge, Sgt Bowen returned to his quarters at nearby Laurel Bay. As he was attempting to open the front door, he was attacked by someone dressed in black, who struck him on the side of his face with a "tire jack," crushing a portion of his skull and resulting in severe arterial bleeding. After the assailant ran out of the carport, Sgt Bowen was able to get into his house and call his wife for help. His wife, nephew, and son rendered first aid, but were unable to stop the bleeding, and they immediately rushed him to Beaufort Naval Hospital, 20 minutes away. During the ride to the hospital, Sgt Bowen's wife and nephew repeatedly asked him who had hit him and what had happened, but he refused to tell anyone, stating only, "Wait and I'll tell you." Finally, after arriving at the hospital, in response to a direct question from his nephew, Sgt Bowen answered that the appellant had struck him. Thereafter, while receiving emergency medical treatment, Sgt Bowen told NIS Special Agent McBride, in the presence of Mrs. Bowen, that it was the appellant who had hit him.

## II.

The Government argued at trial and again in this appeal that the testimony in question was not hearsay, but a statement of identity under Mil.R.Evid. 801(d)(1)(C). Alternatively, the Government contended that if the statements were considered hearsay, they were nevertheless admissible as "excited utterances" under Mil.R.Evid. 803(2).

As to the Government's first theory, Mil.R.Evid. 801(d)(1)(C) provides, in relevant part, that "[a] statement is not hearsay if ... [t]he declarant testifies at the trial or

---

1. I. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN, OVER TRIAL DEFENSE COUNSEL'S OBJECTION, SERGEANT BOWEN'S STATE-MENTS (THAT APPELLANT COMMITTED THE ASSAULT) TO HIS NEPHEW, WIFE AND AN NIS AGENT, WERE INTRODUCED AS EVIDENCE TO THE MEMBERS.

hearing and is subject to cross-examination concerning the statement, and the statement is ... *one of identification of a person made after perceiving the person....*"

According to the drafter's of the Military Rules of Evidence, 801(d)(1)(C) represents a departure from earlier military law.

Under the 1969 Manual rule, an out-of-court statement not within an exception to the hearsay rule and unadopted by the testifying witness, is inadmissible hearsay notwithstanding the fact that the declarant is now on the stand and able to be cross-examined, ¶ 139a; *United States v. Burge,* 1 M.J. 408 (C.M.A.1976) (Cook, J., concurring). The justification for the 1969 Manual rule is presumably the traditional view that out of court statements cannot be adequately tested by cross-examination because of the time differential between the making of the statement and the giving of the in-court testimony. The Federal Rules of Evidence Advisory Committee rejected this view in part believing both that later cross-examination is sufficient to ensure reliability and that earlier statements are usually preferable to later ones because of the possibility of memory loss. *See generally,* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 801(d)(1)(01) (1978). Rule 801(d)(1) thus not only makes an important shift in the military theory of hearsay, but also makes an important change in law by making admissible a number of types of statements that were either inadmissible or likely to be inadmissible under prior military law.

    ....

Under Rule 801(d)(1)(C) a statement of identification is not hearsay. The content of the statement as well as the fact of identification is admissible. The Rule must be read in conjunction with Rule 321 which governs the admissibility of statements of pretrial identification.

Mil.R.Evid. 801 analysis, Manual for Courts-Martial, United States, 1984, app. 22, A22-46.1 to 47. Military Rule of Evidence 321, which concerns eyewitness identification, provides in applicable part:

Testimony concerning a relevant out of court identification by any person is admissible, subject to an appropriate objection under this rule, if such testimony is otherwise admissible under these rules. The witness making the identification and any person who has observed the previous identification may testify concerning it. When in testimony a witness identifies the accused as being, or not being, a participant in an offense or makes any other relevant identification concerning a person in the courtroom, evidence that on a previous occasion the witness made a similar identification is admissible to corroborate the witness' testimony as to identity even if the credibility of the witness has not been attacked directly, subject to appropriate objection under this rule.

Mil.R.Evid. 321(a)(1).

In *United States v. Jones,* 26 M.J. 197 (C.M.A.1988), the U.S. Court of Military Appeals addressed essentially the same argument the Government makes here by stating:

In its answer, the Government argued that ... [testimony as to a victim's prior consistent identification] was not hearsay but a statement of identity under Mil.R.Evid. 801(d)(1)(C). However, it is clear from the legislative history of the Federal Rules of Evidence that such is not the case. Congress intended that Fed.R.Evid. 801(d)(1)(C) remedy the situation where the witness identified the accused *either in a line-up or from photographs....*

26 M.J. at 200 n. 3 (emphasis added).

Mil.R.Evid. 801(d)(1)(C) is taken from the Federal Rule without change. Rule 801(d)(1)(C) was deleted from the original version of the Federal Rules of Evidence, Public Law 93–595, 88 Stat. 1938, because of fears in the Senate that an accused could be convicted solely upon evidence of a prior out-of-court identification. S.REP. No. 93–1277, 93rd Cong., 2d Sess 4 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7063. The rule was subsequently amended by Public Law 94–113, 89 Stat. 576, to include Rule 801(d)(1)(C) in its current version because of the growing acceptance that out-of-court identifications are generally more reliable than courtroom identifications. The Report of the House

Committee on the Judiciary provided the following rationale for the amendment:

> Courtroom identifications can be very suggestive. The defendant is known to be present and generally sits in a certain location. Out-of-court identifications are generally more reliable. They take place relatively soon after the offense, while the incident is still reasonably fresh in the witnesses mind. Out-of-court identifications are particularly important in jurisdictions where there may be a long delay between arrest or indictment and trial. As time goes by, a witness' memory will fade and his identification will become less reliable. An early out-of-court identification provides fairness to defendant's by ensuring accuracy of the identification. At the same time, it aids the government by making sure that delays in the criminal justice system do not lead to cases falling through because the witness can no longer recall the identity of the person he saw commit the crime.

H.REP. No. 94–355, 94th Cong., 1st Sess. 2 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1092, 1094.

Congress clearly expected, however, that such out-of-court identifications would be made in the presence of law enforcement personnel corollary to a criminal investigation. The Report of the House Committee on the Judiciary explained:

> Out-of-court statements of identification can be made in different contexts. They can be made at a preindictment or a postindictment lineup. They can be made at a one-person showup that takes place shortly after the crime. They can also be made after being shown a series of photographs.

H.REP. No. 94–355, 1975 U.S.C.C.A.N. at 1093. According to the Report of the Senate Committee on the Judiciary, "[t]he purpose of [Fed.R.Evid. 801(d)(1)(C)] was to make clear, in line with the recent law in the area, that *nonsuggestive lineup, photographic and other identifications* are not hearsay and therefore are admissible." S.REP. No. 94–199, 94th Cong., 1st Sess., June 18, 1975 (emphasis added) (citations omitted), *quoted in* MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE, § 801.10 at 711 (West Publishing Co. 1981). Given the legislative history and the comment of the Court of Military Appeals in *Jones,* we decline to accept the Government's interpretation of Mil.R.Evid. 801(d)(1)(C),[2] which we hold is restricted to circumstances involving prior identifications in lineups, show-ups, or photographic identifications and does not apply to prior consistent statements of a witness introduced, as was done here, to bolster the witness' in-court testimony.[3]

### III.

■ Neither do we accept the Government's contention that the testimony is admissible as an "excited utterance." The circumstances under which the victim's statements were made do not in our view amount to a "statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Mil. R.Evid. 803(2). In ruling on the admissibility of statements by a child sexual abuse victim to a school counselor, the Court of Military Appeals has recognized that there is no "bright line" rule on excited utterances. *United States v. Arnold,* 25 M.J. 129, 132 (C.M.A.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988). The Court has pointed out, however, that "it is universally recognized that, in order for there to be an excited utterance, the statement must be 'spontaneous, excited or impulsive rather than the product of reflection and

---

**2.** We interpret the concept embodied within this rule of *"identification of a person made after perceiving the person,"* to refer to the perceiving of the individual or a representation of him once again after the event in question, such as in the case of an in-person or photographic lineup or show-up.

**3.** Generally speaking, a witness' testimony cannot be corroborated on direct or redirect examination or rebuttal by proof of prior statements consistent with his in-court testimony. *United States v. Weil,* 561 F.2d 1109, 1111 (4th Cir. 1977); *United States v. Navarro–Varelas,* 541 F.2d 1331 (9th Cir.1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); *Coltrane v. United States,* 418 F.2d 1131 (D.C.Cir. 1969); *Schoppel v. United States,* 270 F.2d 413 (4th Cir.1959).

deliberation'" and that "the declarant must be 'under the stress of excitement caused by the event.'" *Id.* (citations omitted). Here, the victim's statements were not spontaneous but made only in response to repeated questioning by members of his family and only after he had time to reflect. In fact he told his questioners to wait and only told them what happened much later. There is nothing in the way in which Sgt Bowen reacted to the infliction of his injuries that indicates he was under any stress or excitement caused by the assault when he disclosed who had assaulted him. *See United States v. Reggio,* 40 M.J. 694, 699–700, (N.M.C.M.R.1994). We do not find that his statements were "spontaneous, excited or impulsive." We conclude that the military judge abused his discretion in failing to sustain the timely objection of the appellant to this testimony.

## IV.

■ Nevertheless, "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ, art. 59(a), 10 U.S.C. 859(a); *see also United States v. LeMere,* 22 M.J. 61, 69 (C.M.A.1986); *Reggio,* 40 M.J. at 701. Although we have determined that the testimony was erroneously admitted, we also conclude that the error was harmless under the circumstances of this case.

The nonhearsay evidence presented at trial, including a positive in-court identification by Sgt Bowen (who had known appellant well for more than a year), the appellant's admission to a Substance Abuse Control Officer that he "hit Sergeant Bowen with a tire jack," and evidence from which it could be reasonably inferred that the appellant had both a motive and the opportunity to commit the crime was sufficient to establish the appellant's guilt beyond a reasonable doubt. Thus, the hearsay testimony of Sgt Bowen's wife and nephew and of the NIS agent that the Sergeant had identified the appellant as his assailant was cumulative, and no substantial right of the appellant's was materially prejudiced by its admission. *See United States v. Wiley,* 36 M.J. 825 (A.C.M.R.1993);

*see also United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (holding that the Confrontation Clause is satisfied when a hearsay declarant is present at trial, takes an oath, is subject to unrestricted cross-examination, and the jury has an opportunity to observe his demeanor); *United States v. Harjak,* 33 M.J. 577 (N.M.C.M.R. 1991) (holding that a hearsay statement admitted at trial is much less likely to offend the Confrontation Clause when the declarant is available to testify under cross-examination).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge ORR and Senior Judge REED concur.